**Robert J. BARRON, Lynn M. Barron, Donald W. Bradley, Individuals, and Searea Restaurants, Inc., a Wisconsin Corporation, Plaintiffs,**

v.

**TASTEE FREEZ INTERNATIONAL, INC., an Illinois Corporation, and Cella & Associates, Inc., an Oklahoma Corporation, Defendants.**

Civ. A. No. 79–C–1025.

United States District Court, E. D. Wisconsin.

Jan. 25, 1980.

---

John S. Skilton, Jon P. Christiansen, Milwaukee, Wis., for plaintiffs.

Frank J. Daily, Gerald G. Miller, Milwaukee, Wis., David Lowe, Michael O. Warnecke, Craig J. Madson, Chicago, Ill., for defendant Tastee Freez International, Inc.

Donald H. Carlson, Milwaukee, Wis., for defendant Cella & Associates, Inc.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to 28 U.S.C. § 1332 for lost profits, damages arising out of alleged misrepresentations made

by the defendants to the plaintiffs, punitive damages, and rescission of a franchise agreement for the operation of "Big T" restaurants in southeast Wisconsin entered into between the plaintiffs Robert J. Barron and Lynn M. Barron, acting for themselves and as agents for the plaintiff Donald W. Bradley, and the defendant Tastee Freez International, Inc. ("Tastee Freez"). The individual plaintiffs are incorporated under the name of Searea Restaurants, Inc., which is also a named plaintiff. The defendant Cella & Associates, Inc. is a corporation in the business of providing site and market feasibility studies for restaurants.

On November 15, 1977, the Barrons signed a letter of intent to enter into a franchise agreement with Tastee Freez; on March 7, 1978, they signed a market agreement with Tastee Freez; and on October 20, 1978, they signed a restaurant license agreement with Tastee Freez. Pursuant to the agreements (referred to collectively as the "franchise agreement"), the plaintiffs did open a restaurant in Waukesha, Wisconsin, in June 1979. They closed the restaurant on September 27, 1979, after allegedly suffering in excess of $50,000 in operating losses and receiving less than one half of their anticipated yearly revenue as represented to them by the defendants.

Paragraph 25 of the March 7, 1978 market agreement between the Barrons and Tastee Freez states:

> " * * * At the option of THE COMPANY any controversy or claim arising out of or relating to this Agreement or any default or breach thereof, shall be settled by arbitration, conducted in or near Chicago, Illinois, in accordance with the Rules of the American Arbitration Association, and judgment upon the decision rendered by the arbitrator may be entered in any court of competent jurisdiction."

There is an identical provision in paragraph 33 of the October 20, 1978 restaurant license agreement. Pursuant to said provisions and to 9 U.S.C. § 2, Tastee Freez on November 26, 1979, filed charges against the Barrons with the American Arbitration Association in Chicago, alleging breach of contract, failure to pay royalties, and failure to pay on open trade accounts, and seeking $4480 in damages and compliance by the Barrons with the franchise agreement. Subsequent to the filing of this complaint on December 10, 1979, Tastee Freez filed amended charges with the Arbitration Association adding as a ground for relief the Barrons' attempted rescission of the agreement based on a claim of misrepresentation by Tastee Freez. The Barrons notified the Association of this suit and of their contention that the Association lacks jurisdiction over the dispute with Tastee Freez, and it in turn notified them of its position that it has the right to determine whether issues are arbitrable and intends to proceed with the arbitration unless enjoined by the court. On December 27, 1979, the plaintiffs filed a motion to permanently enjoin the pending arbitration. The motion will be denied.

In their complaint plaintiffs set forth seven grounds for relief against Tastee Freez: * (1) fraud in the inducement to enter into the franchise agreement; (2) negligent misrepresentation to the plaintiffs of their likelihood of success under the franchise agreement; (3) strict responsibility for willful misrepresentations; (4) breach of a fiduciary duty owed to the plaintiffs; and (5–7) various violations of the Wisconsin and Illinois franchise investment acts, Ch. 553, Wis. Stats., and Ch. 121½ § 704, Ill.Stats. In their motion to enjoin the arbitration plaintiffs set forth six reasons in support of the motion: (1) that Tastee Freez's fraud in inducing plaintiffs to enter into the franchise agreement should vitiate the entire agreement, including the arbitration provisions; (2) that § 553.76, Wis.Stats., and Ch. 121½ § 736, Ill.Stats., contain provisions voiding the attempted waiver of compliance with any provisions of the franchise invest-

---

* The four common law claims are also brought against Cella & Associates, Inc., which is not a party to the arbitration proceedings.

ment acts, which provisions are similar to § 14 of the Federal Securities Act of 1933, 15 U.S.C. § 77n, interpreted by the United States Supreme Court to void the enforceability of arbitration clauses in contracts between buyers and securities brokers; (3) that if the court stays arbitration of the statutory claims, it should also stay arbitration of the common law claims, which would otherwise be arbitrable; (4) that because there are two plaintiffs and one defendant who are not parties to the arbitration proceeding, it would promote judicial economy to try all of the claims of all of the parties together in this forum; (5) that particularly in view of the plaintiffs' claims of misrepresentation and fraud, plaintiffs should be entitled to the benefits of liberal discovery permitted under the Federal Rules of Civil Procedure; and (6) that if the common law claims are held to be arbitrable, plaintiffs will be foreclosed from recovering punitive damages. The plaintiffs' arguments will be considered individually below.

■ (1) In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court held that when a contract evidencing transactions in interstate commerce contains a broad arbitration clause, a claim of fraud in the inducement of the entire contract is to be referred to an arbitrator:

" * * * Under § 4 [of the Federal Arbitration Act, Title 9 U.S.C.], with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. * * * " 388 U.S. at 403–404, 87 S.Ct. at 1806.

Plaintiffs' argument in this case is identical to that of the appellant in *Prima Paint Corp.*, i. e., that the arbitration should be stayed because of defendants' fraud in the inducement of the entire contract, and therefore the *Prima Paint Corp.* decision is dispositive of this argument.

(2) In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that contract clauses providing for arbitration of claims brought under the Federal Securities Act of 1933 are void, because in that Act Congress created a special right of enforcement for private buyers of claims of misrepresentation by sellers and in conjunction created a wide choice of forums for the buyers, and it would defeat the intent of Congress to allow sellers to avoid those special provisions through insertion of arbitration clauses in their contracts with buyers.

■ Except in a few areas of law, however, notably the Federal Securities Act of 1933 and the federal antitrust statutes, see *Wilko v. Swan*, supra; *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831 (7th Cir. 1977); *Applied Digital Technology, Inc. v. Continental Casualty Company*, 576 F.2d 116 (7th Cir. 1978), federal policy strongly favors the enforcement of arbitration clauses under Title 9 U.S.C. *C. Itoh & Co. (America) Inc. v. Jordan International Company*, 552 F.2d 1228, 1231 (7th Cir. 1977). In *Romnes v. Bache & Co., Incorporated*, 439 F.Supp. 833 (W.D.Wis. 1977), sitting as a judge in the western district of Wisconsin, I had occasion to consider the implications of that federal policy with regard to claims brought under the Federal Commodities Exchange Act, 7 U.S.C. § 1 et seq., and the Wisconsin Uniform Securities Act, Ch. 551, Wis.Stats. The latter act contains a nonavoidance provision similar to those in the Federal Securities Exchange Act and the Wisconsin Franchise Investment Act. I concluded that the arbitration clause at issue in *Romnes* was enforceable for the reasons, among others, that absent an indication from Congress that arbitration should not be permitted,

the federal policy in favor of arbitration should be enforced, and that, despite a contrary state policy:

"The Federal Arbitration Act, 9 U.S.C. § 1 et seq., creates federal substantive law under the authority of the Interstate Commerce Clause. It is not merely procedural. Therefore it requires a federal court to adjudicate the issue of the enforceability of an arbitration clause even in a diversity action according to federal law. A federal court is not bound under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to consider state policy reasons which might suggest that a matter should not be subject to arbitration even though, if presented with the same issue, a state court might reach a different result. * * *" 439 F.Supp. at 838.

Plaintiffs during the oral argument held in this case on January 11, 1980, argued that because the only basis for the court's jurisdiction is diversity, the court should look to state law to determine whether an enforceable contract arbitration clause exists, and only if it finds that such a contract provision does exist under state law should it then apply the provisions of Title 9 U.S.C. to the contract. The policy embodied in Title 9 U.S.C., however, does not depend for its enforceability on the residence of the parties to a contract but rather on the nature of the contract. Thus 9 U.S.C. § 2 provides:

"A written provision in any * * * *contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter, arising out of such contract or transaction or the refusal to perform the whole or any part thereof, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added)

Further, as noted above the Supreme Court has determined that a claim of fraud in the inducement of the contract justifying revocation of the contract is itself arbitrable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, supra.

I recognize that the effect of my holding with respect to this argument of the plaintiffs is to render void any effort made by a state to protect the remedies of franchise investors whose arguments encompass transactions in interstate commerce, even when the contracting parties are both residents of the state which passes the protective laws, see *Allison v. Medicab International, Inc.*, 92 Wash.2d 199, 597 P.2d 380, 383 (1979), but that result is compelled by the language of 9 U.S.C. § 2 and by the authority of Congress under the Interstate Commerce and Supremacy Clauses of the United States Constitution to regulate interstate commercial transactions in the manner it sees fit and to preempt state regulatory efforts which conflict with the federal scheme.

(3) The plaintiffs' third argument is irrelevant since the court has determined that the arbitration of the statutory claims should not be stayed.

(4) In *C. Itoh & Co. (America) Inc. v. Jordan International Company*, 552 F.2d 1228 (7th Cir. 1977), the Seventh Circuit held that considerations of judicial economy are of no significance when they conflict with policies embodied in the Federal Arbitration Act:

"Considerations of judicial economy bear no relation to 'the making and performance of an agreement to arbitrate,' and to permit a district court to deny a stay [of claims before it, see 9 U.S.C. § 3] pending arbitration based on such discretionary considerations would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court. * * *" 552 F.2d at 1231

Therefore the fact that two plaintiffs and one defendant in this action are not parties to the arbitration proceedings is entitled to no weight in the court's decision whether or not to stay those proceedings.

(5) I find no authority for plaintiffs' proposition that considerations of plaintiffs'

**1218**

ability to obtain liberal discovery under the Federal Rules of Civil Procedure and their ability to obtain punitive damages in a court action are entitled to any consideration when weighed against the policies set forth in the Federal Arbitration Act.

For the foregoing reasons,

IT IS ORDERED that the plaintiffs' motion to permanently enjoin the defendant Tastee Freez International, Inc. from pursuing the arbitration of its disputes with the plaintiffs Robert J. Barron and Lynn M. Barron is denied.

