**Natalie KROOG, Plaintiff-Appellee,**

v.

**Steven MAIT and Paine, Webber, Jackson & Curtis, Inc., a foreign corporation, Defendants-Appellants.**

**No. 83–1094.**

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1983.

Decided July 15, 1983.*

Rehearing and Rehearing In Banc Denied Sept. 2, 1983.

---

* An opinion in this case was originally issued as a unanimous opinion on June 14, 1983, but was thereafter withdrawn to permit Judge Eschbach to file a dissenting opinion. The original opinion, now the majority opinion, is unchanged except for the addition of footnotes. Judge Eschbach's dissent has been added.

Don S. Peterson, Minahan & Peterson, S.C., Milwaukee, Wis., for defendants-appellants.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, Wis., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and CAMPBELL, Senior District Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

In this appeal, we are called on to decide whether a provision of the Wisconsin Uniform Securities Law which has the effect of negating an otherwise valid arbitration clause in a securities brokerage contract is preempted by Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, which requires that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall . . . stay the trial of the action until such arbitration has been had . . . . " Because this is a clear case of "actual conflict" between federal and state law as a result of which compliance with both is a "physical impossibility," *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 141–43, 83 S.Ct. 1210, 1216–1217, 1218, 10 L.Ed.2d 248 (1963), we hold, contrary to the district court, that the Arbitration Act must prevail under the Supremacy Clause.

## I.

Plaintiff-appellee originally commenced this action in the County Court for Milwaukee County, Wisconsin, seeking to recover losses in her securities brokerage account allegedly caused by defendants-appellees' conduct in violation of the Wisconsin Uniform Securities Law and in violation of the common law. The first cause of action alleged that defendant Mait, as an "agent," bought and sold securities in Wisconsin in violation of the registration requirements contained in the Wisconsin Uniform Securities Law, Wisc.Stat. §§ 551.31(1) and (2), 551.59(1). The second claim alleged that, because Mait was not properly registered, the brokerage contract between the parties was void and subject to rescission. The remaining three causes of action alleged defendants' liability under the common law theories of mismanagement, unsuitable purchases, excessive trading, and breach of fiduciary duty.

Defendants removed the action to federal district court on the basis of diversity. Af-

** The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ter answering the complaint, defendants moved to stay the proceedings and compel arbitration pursuant to paragraph 15 of the brokerage contract which provided,

> *Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration* in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers or where appropriate, Chicago Board Option Exchange or Commodities Futures Trading Commission, as I may elect. I authorize you if I do not make such election, by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification from you requesting such election, to make such election in my behalf. Any arbitration hereunder shall be before at least three arbitrators and *the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.* (emphasis added).

In further support of their motion to stay, defendants noted the requirements of the Federal Arbitration Act which provide,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Defendants argued that since the controversy at hand arose out of or related to the brokerage contract which was in interstate commerce, and was exactly the kind of dispute the arbitration clause was meant to deal with, the court was required to stay the action and compel arbitration.

Plaintiff opposed the motion to stay, arguing that submission of the dispute to arbitration was forbidden by the Wisconsin Uniform Securities Law, Wisc.Stat. § 551.-59(8), which provided, "Any condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void." Submitting the dispute to arbitration, plaintiff argued (and defendants apparently conceded) would effectively deny plaintiff the protection of this non-waiver provision. And Congress, plaintiff argued, could not have intended the commands of the Arbitration Act to overcome such a provision forbidding arbitral waiver of state securities laws. In support of her argument, plaintiff noted that Section 15 of the Federal Securities Act of 1933 specifically forbade waiver of the protection of the Act's provisions, and that this section was subsequently held by the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), to bar application of Section 3 of the Arbitration Act to stay actions arising under the Federal Securities Act in which the underlying contract contained an arbitration agreement. Plaintiff further argued that since Congress has specifically mandated dual federal-state regulation in the field of securities regulation through Section 18 of the 1933 Securities Act and Section 28(a) of the 1934 Exchange Act and Wisconsin has, pursuant to this authority, enacted an anti-waiver provision nearly identical to the federal provision which was held to eclipse the Arbitration Act in *Wilko,* surely under the pattern of legislative intent discerned in *Wilko,* Congress did not mean the federal Arbitration Act to overcome a state non-waiver provision promulgated pursuant to residual state securities regulation power.[1]

---

1. Plaintiff also apparently argued before the district court that a stay pending arbitration was unwarranted in light of Wisc.Stat. § 551.-59(7) which provides that any contract made in violation of the Wisconsin Uniform Securities Law is unenforceable; since the entire brokerage contract at issue was alleged to be unlawful, she argued, the arbitration clause contained

The district court agreed with the plaintiff that the Federal Arbitration Act did not require that her first two claims alleging violation of the Wisconsin Securities Law be arbitrated in light of the anti-waiver provision contained in Wisc.Stat. § 551.-59(8).[2] The district court began its analysis with the premise that

[f]ederal regulation of a field must not be deemed preemptive of state regulatory authority in the same field in the absence of good reason. The exercise by a state of its inherent police power, which would be perfectly valid in the absence of federal action, is not preempted unless the intention of Congress to do so is clearly manifested in the federal legislation.

The court then posed the issue as a conflict between the mandate of the Arbitration Act and the entire Wisconsin securities regulation scheme, rather than as a conflict between the procedural requirements of the Arbitration Act and the contrary state procedural provision:

The case at bar presents a state remedial statute which adopts a uniform scheme of economic regulation, enacted

pursuant to the state's inherent police power, containing an 'anti-waiver provision.' This state enactment conflicts with a strong federal policy favoring arbitration expressed in the generalized Federal Arbitration Act.

Thus, the district court identified the preemption battlefield involved in this case as that of *securities law* rather than that of policies concerning *informal dispute resolution:*

... the conflict occurs in a subject matter area (securities law) in which the federal enactments contain clear and unequivocal language that they are *not* to be construed so as to preempt state regulation. *See* § 28a 1934 Act, and § 18, 1933 Act.

Having posed this conflict and noting that its own conclusion had been rejected by other district courts,[3] the court here stated its position that

because this is a case where the state law involves inherent police power; is remedial in nature; presents a legislatively created cause of action; contains an anti-

therein is also void. Plaintiff appears to have abandoned this alternative argument on appeal, apparently recognizing that it would be unavailing in light of the doctrine announced in *Prima Paint Corp. v. Flood and Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), that arbitration clauses are severable, as matter of federal law, from the contracts in which they are embedded and hence allegations as to the unlawful inducement of the contract generally are not sufficient to prevent application of Section 3 of the Arbitration Act. Belatedly on appeal, plaintiff has for the first time sought to exploit the door left open in *Prima Paint*—that contractually prescribed arbitration will not be enforced where there is an allegation of fraud in connection with the making of the agreement to arbitrate, 388 U.S. at 403–04, 87 S.Ct. at 1805–1806. Although plaintiff on appeal argues that the arbitration clause here, and indeed, any form arbitration clause, is a "fraudulent device," or, alternatively, a contract of adhesion, she cites no record evidence in support of this claim, and the only case she cites in support of this argument is *Wilko v. Swan, supra,* which held not that an arbitration clause was *per se* fraudulent, but merely that such a clause conflicted with the policy of the Federal Securities Act. Accordingly, we consider it inappropriate to analyze this belated and unsupported claim on appeal.

**2.** The district court did not address whether plaintiff's common law claims could withstand the application of the Federal Arbitration Act, and on appeal, plaintiff has offered no reason why they should not. In light of our holding below with respect to the statutory claims, we will not address this issue but instead instruct the district court on remand to consider whether the common law claims are arbitrable under the contractual arbitration clause here at issue.

**3.** The conflict presented here has been presented in only three reported federal cases of which we are aware; in all three cases, Section 3 of the Arbitration Act was held to require arbitration despite the presence of a statutory non-waiver provision. *See Bache Halsey Stuart Shields, Inc. v. Moebius,* 531 F.Supp. 75 (E.D. Wis.1982) (non-waiver provision under Wisconsin Uniform Securities Law); *Barron v. Tastee Freez International, Inc.,* 482 F.Supp. 1213 (E.D.Wis.1980) (same); *Klein Sleep Products, Inc. v. Hillside Bedding Co.,* 563 F.Supp. 904 (S.D.N.Y.1982) (non-waiver provision in New York Franchise Sales Act). However, only in the latter two cases did the court directly discuss the impact of the non-waiver provision.

waiver clause; and deals with an area of the law in which Congress has expressly indicated it has not preempted state regulation, this Court is of the opinion that the statute can withstand the generalized provisions of the Federal Arbitration Act. Accordingly, the district court denied the defendants' motion to stay proceedings and compel arbitration. From this determination, defendants appeal.

## II.

The Supreme Court has mandated that federal preemption questions be addressed through a two-tier inquiry. The reviewing court must first ask whether there is "such actual conflict between the two schemes of regulation that both cannot stand in the same area." *Florida Avocado Growers, Inc. v. Paul,* 373 U.S. 141, 83 S.Ct. 1217 (1963). If such "actual conflict" is found, the inquiry is at an end. Or, as the Supreme Court has stated, "A holding of federal exclusion of state law is inescapable and *requires no inquiry into congressional design where compliance with both federal and state regulation is a physical impossibility* for one engaged in interstate commerce...." *Id.* at 142–43, 83 S.Ct. at 1217. (emphasis added). In short, the assessment of "actual" or "facial" conflict is a threshold inquiry we cannot escape; only if this inquiry is answered negatively can we entertain arguments as to the intent of Congress to occupy the field or preclude the kind of state regulation at issue. *Pacific Gas and Electric Co. v. State Energy Resource Conservation and Development Commission,* —— U.S. ——, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983) ("Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law."); *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 165, 98 S.Ct. 988, 994–995, 998, 55 L.Ed.2d 179 (1978); *DeCanas v. Bica,* 424 U.S. 351, 363, 96 S.Ct. 933, 940, 47 L.Ed.2d 43 (1976); *McDermott v. Wisconsin,* 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913). *See also* L. Tribe, American Constitutional Law, § 6–24 at 377–78 (1978); C. Antieu, 2 Modern Constitutional

Law, § 10:22 at 41–42 (1969) ("Where state rules clash with an act of Congress in the field of interstate commerce, there is no weighing by the courts of supposed state interests versus national interests. This the court presumes has been done by Congress in enacting the legislation within its constitutional power.").

The instant case, we think, presents an "actual conflict" which may not be avoided, as the district court endeavored to do, through a balancing of state and federal interests. The Federal Arbitration Act, 9 U.S.C. § 3, declares unambiguously that in *"any suit or proceeding . . .* brought in any of the courts of the United States *upon any issue* referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is proceeding *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement." (emphasis added). Wisc.Stat. § 551.59(8) purports to prohibit such a procedure. Plainly, here "compliance with both federal and state [laws] is a physical impossibility," *Florida Avocado Growers, Inc. v. Paul,* 373 U.S. 142, 83 S.Ct. 142, 83 S.Ct. 1217 (1963). In such circumstances, the Federal Arbitration Act must prevail.

The matter might well stand differently if the Federal Arbitration Act declared only a general, non-binding policy in favor of arbitration, through the use of such qualifying words as "where feasible." But the language of the Act is not precatory. Instead, as the Supreme Court has recently noted, the Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, *notwithstanding any state substantive or procedural policies to the contrary.* The effect of [Section 2 of the Act, generally holding such agreements enforceable] is to create *a body of federal substantive law* of arbitrability, applicable to any arbitration agreements within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis added). The

Act, then, clearly mandates a specific procedure "notwithstanding any state substantive or procedural policies to the contrary" upon the meeting of certain prerequisites,[4] the existence of which is not challenged here; the state act blocks the effectuation of that procedure. Thus, the case at bar falls squarely within the line of cases such as *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (Federal treasury regulations providing that Savings Bonds held in co-ownership pass to a surviving co-owner preempts contrary Texas community property law.); *Castle v. Hayes Freight Lines, Inc.,* 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68 (1954) (Federal certification of motor carrier under Motor Carriers Act preempts state attempt to suspend carriers for violating state highway regulations.); and *McDermott v. Wisconsin,* 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913) (Federal act permitting certain labelling preempts contrary state provision preventing use of federally approved labelling.)—all of which held preemption exists where such "actual conflict" between federal and state regulation exists. As surely as Texas community property law prevented federally mandated passage of bond ownership in *Bland* or Illinois law forbade the passage of federally certified carriers in *Castle* or Wisconsin law prohibited the application of federally mandated labels in *McDermott,* the Wisconsin anti-waiver provision as sought to be applied here conflicts with the procedure required under the Federal Arbitration Act. The Wisconsin law may not prevail.

The district court appeared to avoid this result through two-step reasoning. First, it downplayed the existence of direct, irreconcilable conflict (although it did acknowledge that the Wisconsin provision "conflicts" with the Arbitration Act) by maintaining that the real question before it concerned the clash between the Federal Arbitration Act and *the scheme of substantive Wisconsin securities regulation.* Having determined that the Federal Arbitration Act and state securities policy were the contenders for dominance, the district court concluded that the state anti-waiver provision must prevail because Congress declared its intent to leave *state securities regulation* intact and *Wilko v. Swan* expressly approved the confinement of the Arbitration Act where the Federal Securities Act of 1933 was involved (due to the existence of the latter's anti-waiver provision) and thus by analogy would have countenanced the same result where state securities acts were at issue (due to a similar anti-waiver provision). We think the district court's reasoning is vulnerable at either step.

First, the conflict we face is plainly not one of federal arbitration procedures versus Wisconsin substantive securities regulation. The conflict is rather between two *procedural* mandates—one that commands, and the other that prohibits, the arbitration of brokerage contract claims. If the Arbitration Act prevails, Wisconsin substantive securities law remains intact, and would indeed have to be considered by the arbitrator of the dispute here. In short, the real field

4. Plaintiff appears to argue on appeal that the language of Section 2 of the Arbitration Act making arbitration clauses enforceable "save upon such grounds as exist in law or in equity for the revocation of any contract" suggests that Congress countenanced that the Arbitration Act could be voided *ab initio* by state enactments like Wisconsin's purporting to prohibit arbitration. However, this argument, which was not considered by the district court, ignores the language and purpose of the Act. Section 2 by its very terms permits voiding an arbitration clause only on legal grounds applicable to "any contract"; state law aimed specifically at preventing arbitration (unlike, say, the statute of frauds) is obviously not such a universally applicable legal principle. Moreover, such an expansive interpretation of Sec-

tion 2 is contrary to the entire thrust of the Act which creates a "body of federal substantive law" mandating arbitration "notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Memorial Hospital, supra,* 103 S.Ct. at 941. Although the Supreme Court has not directly addressed this issue, we have previously held that the escape clause of Section 2 makes available only legal and equitable defenses not grounded in state law seeking to directly contravene the federal Act's policies. *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1269–70 (7th Cir.1976). Other circuits have agreed. *See, e.g., Medical Development Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir. 1973); *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995, 996–97 (8th Cir.1972).

of analysis here is the set of competing federal and state policies with respect to *non-legal dispute resolution,* not with respect to *securities regulation.* Accordingly, the district court's citation to the dual federal-state regulatory scheme in the securities field and the Supreme Court's interpretation of the "intention of Congress concerning the sale of securities" in *Wilko v. Swan,* 346 U.S. at 427, 438, 74 S.Ct. at 188, is essentially irrelevant to the required analysis.

But even if securities regulation were somehow the field in which the required preemption analysis were to take place, it would still be inappropriate to apply the policy of *Wilko* to constrict the application of the Arbitration Act to claims based on breaches of state securities law. This is so because the Supreme Court in *Wilko* was concerned solely and expressly with the proper reconciliation of two "not easily reconcilable" *federal* mandates—the Securities Act and the Arbitration Act, *see* 346 U.S. at 438, 74 S.Ct. at 188. It is a *non sequitur* to assume, as does plaintiff, that this *lateral* balance of diametrically opposed *federal* policies, and consequent delimitation of the Arbitration Act, would be applied vertically to restrict the Arbitration Act's impact on conflicting *state* procedures. To the contrary, to the extent that the Supreme Court held that a Wisconsin-style federal non-waiver provision and the Arbitration Act were in *direct conflict,* 346 U.S. at 433, 438, 74 S.Ct. at 186, 188, its *Wilko* opinion suggests that the Wisconsin procedural provision would have to yield under the "actual conflict" and "physical impossibility" standards enunciated in *Florida Avocado Growers, Inc. v. Paul,* 373 U.S. 141, 83 S.Ct. 1216–1217 (1963), and its predecessors and progeny. To hold that *Wilko*'s delimitation of the Arbitration Act's application to an-

other federal law is vertically transferable to protect state anti-waiver clauses is to deny that Congress may choose not to apply interstate commerce-based policies to exclusively Federal subject matter. Such a view cannot be correct, for it is unquestioned that Congress has the power to, and regularly does, exempt exclusively federal subject matter from the reach of substantive interstate commerce regulation (*e.g.,* in the nuclear power and environmental fields) without thereby automatically sanctioning state attempts to remove private and state actors from such regulation.[5]

In sum, we think that the district court's search for congressional intent with respect to the Arbitration Act *via* the 1933 and 1934 Securities Acts and *Wilko* could not be productive. Here we face a naked and irreconcilable conflict between a precise federal mandate to arbitrate and a state provision which prevents arbitration. Once that conflict has been described, we need go no further, for federal preemption in such cases is automatic. *Pacific Gas and Electric Co.,* —— U.S. ——, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 165, 98 S.Ct. 988, 994, 998, 55 L.Ed.2d 179 (1978).

For the foregoing reasons, the district court's denial of defendants-appellants' motion to stay proceedings and compel arbitration is reversed and the case is remanded with directions that proceedings be stayed and plaintiff-appellee's statutory claims, and, if otherwise warranted, her common law claims, be submitted to arbitration.

REVERSED AND REMANDED.

ESCHBACH, Circuit Judge, dissenting.

While I agree with many of the general principles discussed in my brother Wood's well written opinion, I part company with

---

5. It is true, as the dissent notes, that the case for federal preemption may be less persuasive where coordinated state and federal efforts exist within a complementary administrative framework. *New York State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516–2517, 37 L.Ed.2d 688 (1973). But here there is no indication that Congress has chosen to temper the imperatives

of the Federal Arbitration Act with respect for *state* policies regarding informal dispute resolution in the securities, or any other, field. *Compare Dublino, supra,* at 418–21, 93 S.Ct. at 2515–2516, 2517 (no preemption found where *federal* statute contains express statement of its limited applicability against states and where there exists long-standing federal administrative practice of deferring to state activity).

the majority on an issue of critical importance—the content of the federal law which is to be compared with the Wisconsin anti-waiver provision in order to determine whether federal law has preempted state law. The majority compares the provisions of the Federal Arbitration Act with the provisions of the Wisconsin Uniform Securities Law and concludes that there is an actual or facial conflict. With this I agree. However, in assessing whether "federal law" has preempted the Wisconsin anti-waiver provision, we must look not only at the Federal Arbitration Act, but also at other federal laws and court decisions that have interpreted, applied, and possibly modified the Arbitration Act. *See Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (court must consider relationship between state and federal laws as they are interpreted and applied, not just as they are written). The relevant federal law in this case consists of the Federal Arbitration Act, the federal securities acts of 1933 and 1934, and case law interpreting these statutes.

Section 18 of the Securities Act of 1933, 15 U.S.C. § 77r, and § 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a), specifically provide for concurrent state regulation of securities. Section 14 of the 1933 Act, 15 U.S.C. § 77n, bars waiver of a judicial forum by an arbitration agreement, in spite of the provisions of the Federal Arbitration Act favoring such agreements. *Wilko v. Swan,* 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953). While *Wilko* dealt only with actions under the federal securities laws, much of the court's analysis applies with equal force to a state's attempt to preserve a judicial forum for buyers of securities. The Court enumerated possible shortcomings of arbitration in this field and recognized that the advantages the securities laws provided a buyer may be less effective in arbitration than in judicial proceedings. *Id.* at 434–37, 74 S.Ct. at 186–188. The Court found it reasonable for Congress to put buyers of securities covered by the 1933 Act on a different basis from other purchasers. *Id.* at 435, 74 S.Ct. at 186–187. From the pro-visions of the federal securities acts specifically sanctioning state regulation and from the Supreme Court's interpretation of the acts in *Wilko,* I conclude that Congress, in enacting the securities acts, impliedly modified the preexisting general provisions of the Arbitration Act as they would apply in the areas of both federal and state securities regulation. Thus, while the bare words of the Arbitration Act are in facial conflict with the Wisconsin Uniform Securities Law, "federal law" is not.

Having answered the threshold question of actual or facial conflict in the negative, I find that the district court was correct in its analysis of the competing federal and state interests and in its conclusion that the Wisconsin anti-waiver provision has not been preempted by federal law. Contrary to the majority's assertion, the "preemption battlefield" in the instant case is not merely that of policies concerning informal dispute resolution, but rather that of procedural advantages necessary to fully effectuate the substantive provisions of the Wisconsin securities laws. *Cf. id.* at 434–37, 74 S.Ct. at 186–188 (discussing the advantages of a judicial forum over arbitration in the context of federal securities laws). Wisconsin has chosen to regulate securities in a framework that is complementary to federal law and which furthers a common purpose, i.e., the protection of the investor. In this situation, the case for preemption is not persuasive. *See New York State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973); *cf. Merrill Lynch, Pierce, Fenner & Smith v. Ware,* 414 U.S. 117, 137, 94 S.Ct. 383, 395, 38 L.Ed.2d 348 (1973) (where the federal government provides for collaboration, the courts should not find conflict). In support of my conclusion that federal law has not preempted the Wisconsin anti-waiver provision, I concur in the following analysis of the district court:

> Proper adherence to the principles of Federalism require that, where there is a conflict between state and federal policies, preemption of the subject area by the federal enactment should take place

only when Congress clearly intends it to occur. The case at bar presents a state remedial statute which adopts a uniform scheme of economic regulation, enacted pursuant to the state's inherent police power, containing an "anti-waiver" provision. This state enactment conflicts with a strong federal policy favoring arbitration expressed in the generalized Federal Arbitration Act. However, the conflict occurs in a subject matter area (securities law) in which the federal enactments contain clear and unequivocal language that they are *not* to be construed so as to preempt state securities regulation. *See* § 28a, 1934 Act, and § 18, 1933 Act. In this context, it would seem that the Arbitration Act ought not to preempt the Wisconsin Securities law with its anti-waiver provision.

    \*     \*     \*     \*     \*     \*

In summary, because this is a case where the state law involves inherent police power; is remedial in nature; presents a legislatively created cause of action; contains an anti-waiver clause; and deals with an area of the law in which Congress has expressly indicated it has not preempted state regulation, this Court is of the opinion that the statute can withstand the generalized provisions of the Federal Arbitration Act.

Decision and Order at 8, 11. Kroog should not be compelled to arbitrate the two claims she brought under the Wisconsin Uniform Securities Law. Accordingly, I respectfully dissent from the majority's decision directing that proceedings be stayed pending arbitration of these claims.