**Mike MICHAEL, Plaintiff,**

v.

**NAP CONSUMER ELECTRONICS CORP.; G.T.E. International, Inc., Philips Lodging Products Division, NAP Commercial Electronics Corp., Defendants.**

Civ. No. 83–0232 (TR).

United States District Court,
D. Puerto Rico.

Oct. 13, 1983.

Pedro Miranda Corrada, San Juan, P.R., for plaintiffs.

Edgardo Cartagena Santiago, O'Neill & Borges, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

TORRUELLA, Chief Judge.

Plaintiff, Mike Michael (Michael) has recurred to this Court seeking the protection afforded by Act 75 to the Agency Agreement (Agreement) entered into between Michael and G.T.E. International Inc. (GTEI). Pursuant to the Agreement GTEI appointed Michael its exclusive sales agent for sales of its products in Puerto Rico. The Agreement was subsequently assigned to Codefendant N.A.P. Consumer Electronics Corp. (NAPCEC). Michael contends that ever since the assignment, which allegedly was done without Michael's consent, the Codefendants have incurred in acts which have tended to alter and modify the Agreement in violation of Act 75.

Plaintiff by coming before this Court in first instance has by-passed an arbitration procedure established in the Agreement. The clause calls for submitting to arbitration all disputes arising in connection with the Agreement. All the Defendants herein, faced with Michael's noncompliance with the arbitration clause, filed an action to compel arbitration in the United States District Court for the Eastern District of Tennessee, Northern Division.

Pending before us is Michael's Motion for Partial Summary Judgment contending that the arbitration clause is null and void insofar as it is contrary to the public policy of the Commonwealth of Puerto Rico. On the other hand Defendants have moved the Court to stay the proceedings pending the arbitration order issued by the Tennessee Court.

In this case we are called to dilucidate whether the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, preempts Article 3–B of the Puerto Rico Dealer's Contracts Act, Act No. 75 of June 24, 1964. (Act 75). 10 L.P.R.A. § 278b–2.[1]

The Federal Arbitration Act empowers any court of the United States to stay any action upon which any issue referable to arbitration under an agreement in writing providing for such arbitration is brought before the court. 9 U.S.C. § 3. On the other hand Article 3–B of Act 75 declares as null and void, as being contrary to state public policy any clause that obliges a dealer to arbitrate any matter related to the dealership agreement.

When faced with a Federal preemption question the court must inquire whether the "nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." (Citations omitted). *Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, n. 42, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Stated in another manner, a state enactment must give way to Federal legislation where a valid "Act of Congress fairly interpreted is in actual conflict with the law of the State." *Id.* Thus we must find a State law preempted by Federal regulation whenever the "challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). See also *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1129, 67 L.Ed.2d 258 (1981). This is more so when the State statute conflicts with or interferes with the Federal authority to regulate interstate commerce. *Id.* 450 U.S. at 319, 101 S.Ct. at 1131.

---

1. Article 3–B reads as follows:
   "§ 278b–2. Interpretation pursuant to laws of the Commonwealth.
   The dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void.

   Any stipulation that obligated a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void."

The Court of Appeals for the Seventh Circuit just recently considered the same issue we have before us. *Kroog v. Mait,* 712 F.2d 1148 (7th Cir.1983). The Court held that the Federal Arbitration Act and the Wisconsin Uniform Securities Law, which forbid the submission of disputes to arbitration, were in actual conflict and compliance with both laws resulted in a legal impossibility. *Id.* 712 F.2d at 1152.

█ In the case before us we have the same situation, compliance with both acts results in a legal impossibility. By its own terms the Federal Arbitration Act requires that whenever an agreement in writing provides for arbitration the Court shall refer to arbitration the arbitrable issues at a party's request. 9 U.S.C. § 3. Section 2 of the Federal Arbitration Act provides that "a written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court declared that Section 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements *notwithstanding any state substantive or procedural policies to the contrary.* The effect of the section is to create a body of Federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act." *Moses H. Cone Hospital v. Mercury Constr. Corp.,* — U.S. —, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). (Emphasis ours).

Thus there is no doubt as to the nature of the regulated subject matter, Congress clearly intended that all arbitration agreements involved in "commerce" be afforded Federal protection and established a procedure for that purpose.

The Federal Arbitration Act is based upon Congress' power to legislate on matters related to interstate commerce. *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). The Act is straightforward and unambiguous in its direction to the Federal Courts on how to conduct themselves in cases where the Federal Arbitration Act is invoked.

Contrary to the terms of the Federal Arbitration Act, Article 3–B of Act 75 clearly voids and makes unenforceable any stipulation that requires the dealer to arbitrate any controversy related to the dealership contract. See *Walborg Corporation v. Tribunal Superior,* 104 D.P.R. 184 (1975). Section 3B of Act 75 prohibits the conduct which the Federal Arbitration Act attempts to encourage. The Federal statute is precise in its mandate to arbitrate while on the other hand the state enactment is just as clear in its proscription of agreements to arbitrate.

We cannot but conclude that Article 3–B of Act 75 is in direct and actual conflict with the Federal Arbitration Act, and that Article 3–B is preempted by the Federal Arbitration Act. This being the case any consideration of state public policy must be subordinated to the Federal interests involved herein.

Michael further contends that pursuant to the escape clause contained in Section 2 of the Federal Arbitration Act the Agreement to arbitrate in this case is revocable insofar as it is contrary to the public policy of the Commonwealth of Puerto Rico. The pertinent part of Section 2 states that arbitration clauses "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It has been consistently held that pursuant to Section 2, Federal Courts are no longer to apply state statutes and decisions that limit arbitration agreements with rules which do apply to other contracts. *Collins Radio Company v. Ex-Cell-O Corporation,* 467 F.2d 995 (8th Cir., 1972) and cases cited therein. See also *Kroog v. Mait, supra,* 712 F.2d at 1153, n. 4. This interpretation is buttressed by the Supreme Court decision of *Moses Cone Memorial Hospital v. Mercury Construction Corp., supra,* wherein it was held that the Federal Arbitration Act created a body of Federal substantive law of arbitrability, notwithstand-

ing any state substantive or procedural policies to the contrary. Michael's position contravenes the thrust of the Federal Arbitration Act inasmuch as it applies a state statute which embodies a state policy that proscribes the use of arbitration clauses *only* in dealership contracts. Therefore we find that the Federal Arbitration Act makes available only legal and equitable defenses not grounded in state law seeking to divert or contravene the Act's policies.

In view of the foregoing Michael's Motion for Partial Summary Judgment is hereby DENIED. It is further ORDERED that this case be STAYED pending the outcome of the arbitration that has been ordered by the United States District Court for the Eastern District of Tennessee in Case Number 3–83–316. The stay shall be extended to all parties in this action.[2]

IT IS SO ORDERED.

---

**2.** Codefendant's Philips Lodging and N.A.P. Commercial Electronics are not parties to the Agreement to arbitrate. Plaintiff has included them as Defendants for their alleged failure to supply equipment ordered under the agency agreement. We find that this claim is dependent on the question whether the other Defendants were at fault under the agreement for not processing Plaintiff's order, an issue which is under arbitration. Thus, this claim is dependent on the outcome of the arbitration.