456 So.2d 1175 (1984)
OPPENHEIMER & CO., INC., Petitioner,
v.
Marcia YOUNG, Respondent.
No. 64140.
Supreme Court of Florida.
September 27, 1984.
*1176 Stanley A. Beiley, Richard E. Brodsky and David S. Garbett of Paul, Landy, Beiley, & Harper, P.A., Miami, for petitioner.
Mercedes C. Busto of Bailey & Dawes, Miami, for respondent.
SHAW, Justice.
This is a petition to review Young v. Oppenheimer & Co., 434 So.2d 369 (Fla. 3d DCA 1983), on the ground it conflicts with Raymond, James & Associates v. Maves, 384 So.2d 716 (Fla. 2d DCA 1980), and Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed, 405 So.2d 790 (Fla. 4th DCA 1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Respondent Young sued petitioner Oppenheimer claiming Oppenheimer violated the Florida Securities Act, chapter 517, Florida Statutes (1981), and committed common law fraud, negligence, and breach of fiduciary duty in handling Young's brokerage account. The trial court granted Oppenheimer's motion to compel arbitration *1177 on the basis of an agreement between the parties requiring arbitration of disputes. In doing so, the trial court relied on Melamed for the proposition that the Federal Arbitration Act compelled arbitration. The district court granted a writ of certiorari and quashed the trial court's order on the basis that the Florida Securities Act extends the same civil remedies as the laws of the United States for the purchasers of securities in interstate commerce and that United States law precludes the enforcement of an arbitration agreement when a dispute concerns securities in interstate commerce. Shearson, Hammill & Co. v. Vouis, 247 So.2d 733 (Fla. 3d DCA 1971).
Petitioner first urges that section 517.241, Florida Statutes (1981) does not contain an express prohibition against arbitration of disputes arising under the Florida Securities Act and that our decision is controlled by section 682.03, Florida Statutes (1981), which provides that arbitration agreements are valid, irrevocable, and enforceable. In support, petitioner points out that there is a strong public policy favoring arbitration as an alternative to judicial litigation of disputes. Petitioner concedes that the arbitration agreement would not be enforceable under federal securities laws but nevertheless urges that it should be enforced under state law.[1] We agree with much of petitioner's argument but not its conclusion. Arbitration agreements are valid, irrevocable, and enforceable and public policy favors arbitration as an alternative to litigation. Nevertheless, we are persuaded that it was the intent of the legislature, in enacting the Florida Securities Act, to rely on federal laws and enforcement efforts in the securities field and to cooperate with those efforts in formulating Florida law. Prior to the enactment by Congress in May 1933 of the Securities Act of 1933, regulation of securities was the responsibility of the states and all states, except Nevada, had laws governing securities transactions.[2] Section 18 of the Securities Act preserved the role of the states in regulating securities transactions. The Florida Legislature reacted almost immediately to the entry of the federal government into the securities field by enacting chapter 16174, Laws of Florida (1933). Sections 4, 5, and 6 of chapter 16174 are pertinent to our inquiry. Section 4[3] provided not only for cooperation with federal authorities regulating securities transactions but, to the degree possible under state law, provided for the actual application of federal laws and regulations to the sale of securities intrastate. Section 5[4] *1178 granted to purchasers of securities the same civil remedies provided by laws of the United States for purchasers of securities under such federal laws. Section 6[5] granted jurisdiction to the courts of this state to hear civil suits concerning securities violations of federal laws to the degree the courts had jurisdiction to hear civil suits concerning securities violations of the laws of Florida. It is clear from the above that the legislature intended that Florida securities laws be hand-in-glove with federal securities laws and that Florida purchasers of securities be granted the full range of civil remedies offered by both Florida and federal securities laws. It is a well established rule of statutory construction that statutes or parts of statutes borrowed from other jurisdictions will normally be given the same construction in Florida courts as the prototype statute is given by courts in other jurisdictions. Flammer v. Patton, 245 So.2d 854 (Fla. 1971). This rule is, of course, not binding and is subordinate to the cardinal principle that legislative intent is the polestar of statutory construction. Tyson v. Lanier, 156 So.2d 833 (Fla. 1963). Here, however, the rule is particularly apt because we have a clear statement from the legislative text that the legislature intended to maintain close consonance with federal legislation. To our mind, this specific legislative intent in a particular field of law carries more weight than the general declaration in section 682.03 that arbitration agreements are valid, irrevocable, and enforceable. Thus, we agree with the district court that we should follow Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) in holding that an arbitration agreement concerning disputes in securities is unenforceable. We are also influenced by the very practical consideration that holding otherwise would waste judicial resources. Normally, both federal and state causes of action based on security violations in interstate commerce may be heard in either federal or state courts. This is the most economical disposition available and serves both federal and state interests. The adoption of a rule that the state cause of action is subject to arbitration, while the federal cause of action is not, would lead to an uneconomical bifurcation of proceedings.[6]
Petitioner next urges that the Federal Arbitration Act (FAA) preempts the question of arbitration of disputes concerning interstate commerce and that the supremacy clause mandates that we enforce the arbitration agreement. In support, petitioner relies most heavily on Southland Corp. v. Keating, ___ U.S. ___, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), but also cites Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), Kroog v. Mait, 712 F.2d 1148 (7th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), Melamed, and Maves, for the same proposition. In Keating v. Superior Court of Alameda County, 31 Cal.3d 584, 183 Cal. Rptr. 360, 645 P.2d 1192 (1982), the California Supreme Court held that claims asserted under the state's Franchise Investment Law were not arbitrable and that the state law did not contravene the provisions of the FAA calling for the enforcement of arbitration agreements when the dispute involved interstate commerce. In so holding, the *1179 court noted that "California's policy of protecting judicial remedies ... was patterned after, and consistent with, federal policy in the analogous area of securities investment." Id. at 1202-03. In reversing the California Supreme Court, the Southland Court held that the California law was contrary to the FAA and thus violated the supremacy clause. By footnote, the Court rejected the analogy drawn with the federal securities law and the reliance on Wilko:
The question in Wilko was not whether a state legislature could create an exception to § 2 of the Arbitration Act, but rather whether Congress, in subsequently enacting the Securities Act, had in fact created such an exception.
Southland, 104 S.Ct. at 864 n. 11. Petitioner urges that Southland is directly on point and dispositive of the issue before us because, in petitioner's view, Southland holds that a state may not contravene the provisions of the FAA. Although it is substance and not form which controls the question of what constitutes a "security," typically, a franchise is not considered to be a security within the meaning of federal securities law. Nash & Associates, Inc. v. Lum's, Inc., 484 F.2d 392 (6th Cir.1973). In our view, the Southland court simply recognized that a franchise is not typically a security and rejected the attempted analogy between franchise regulation and securities regulation. The court did not reject, or even address, the question of whether the Wilko exemption from the FAA extended to state securities laws. It is hazardous to draw conclusions from non-dispositive footnotes, but the rejection of the analogy at least suggests that had the analogy been accepted or had the California law concerned securities regulations, the Wilko exemption would have extended to the state law. For our purposes, it is enough to say that Southland is off point.
Petitioner also relies on Scherk, which dealt with an agreement between United States and foreign citizens to resolve any disputes in an international forum. On its facts, Scherk offers no guidance here. Scherk appears to rest on the pragmatic consideration that there is no international supremacy clause to resolve disputes about forum selection.
Petitioner also relies on Kroog. We agree that Kroog is on point but, for the reasons set forth herein, do not agree with the Kroog court.
Petitioner also relies on two Florida cases, Melamed and Maves. The issue in Melamed was whether the FAA superseded inconsistent provisions of the Florida arbitration code, sections 682.01 to 682.22, Florida Statutes (1979), which provided that an arbitration agreement was not enforceable if it incorporated the laws of another state. Although the facts of the case indicate that an interstate securities transaction was involved, the court did not address the issue of whether Wilko and Florida securities law controlled. We agree with the court's disposition of the issue as posed and see no conflict with our decision here. In Maves the court addressed the issue posed here but concluded that the Florida Securities Act had no counterpart to the federal anti-waiver exemption established by Wilko. We disagree and disapprove Maves.
Finally, petitioner urges that in deciding this question we are obliged to look only at the FAA and that the issue is one involving arbitration, not securities regulations. We disagree. It is true that if we looked only at the text of the FAA we would find conflict between preemptive federal law and our decision here. What petitioner overlooks is that we are obliged not only to look at federal statutes but at controlling case law from the Supreme Court interpreting these statutes. In Wilko the Court interpreted both federal securities law and the FAA and held that the FAA did not require arbitration of disputes concerning interstate securities transactions. Thus, we see no conflict between our decision here and federal law.
The decision of the district court is approved.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON and ALDERMAN, JJ., concur.
*1180 EHRLICH, J., dissents with an opinion in which McDONALD, J., concurs.
EHRLICH, Justice, dissenting.
I dissent because I do not believe that section 517.241(3), which incorporates into Florida law the civil remedies provided by federal law, makes Wilko v. Swan a mandatory gloss on the state security laws under which this claim was raised.
I recognize that Wilko stands for the semantically and logically incongruous proposition that the choice of a forum is, in itself, a remedy. That decision was based on the protection expressed in section 14 of the Securities Act of 1933 (codified at 15 U.S.C. § 77n): "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." (Emphasis supplied.) The Wilko Court went on to find that the right to bring a claim in judicial proceedings is "a provision of this subchapter" which could not be waived. The Court there, it must be remembered, balanced a general arbitration act against a specific anti-waiver protection, and applied the rule of statutory construction that a specific provision controls over a general one. Thus, the section which specifically addressed federal securities regulation controlled over a federal statute which generally authorized arbitration.
If the Florida legislature intended to provide anti-waiver protection through section 517.241(3), it did so in an oblique and confusing way. The general incorporation of a body of law that includes a federal anti-waiver provision which, by its very terms, limits its applicability to that specific subchapter of federal law and the rules and regulations of the SEC, cannot, it seems clear to me, control over the specific authorization of arbitration in Florida law. To the extent the incorporation of the anti-waiver provision is incorporated into Florida law, it is still expressly limited to those claims asserting federal civil remedies, not those, like the one now before us, arising from state law.
I would disapprove the decision of the district court below and approve Maves and Melamed.
McDONALD, J., concurs.
NOTES
[1] Prior to initiating suit in state court, respondent brought suit in federal district court on both federal and state causes of action. The state cause of action was dismissed for lack of pendent jurisdiction. Respondent urges that petitioner waived its right to arbitration by failing to invoke the arbitration agreement in federal court. Petitioner counters, and we agree, that it would have been pointless to invoke the agreement in federal court because federal law prohibits enforcement of such agreements where the dispute concerns securities in interstate commerce. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).
[2] For a contemporaneous discussion of the impact of the Securities Act of 1933 and the Securities Exchange Act of 1934 on state blue sky laws, see Smith, State Blue Sky Laws and the Federal Securities Acts, 34 Mich.L.Rev. 1135 (1936).
[3] Section 4 reads:

The Securities Commission shall have power to make any reasonable rules and regulations which it may deem necessary to co-operate effectively with the Federal Trade Commission or any other agency of the United States Government, which may have supervision or control over the sale of securities in Interstate Commerce under any law of the United States, now or hereafter in force, and to apply to intrastate sales or offerings such Federal laws and/or regulations applicable to such sales or offerings in interstate commerce, as the Commission may deem necessary for the proper conduct of such intrastate sales or offerings, and not in conflict with the laws of this State.
[4] Section 5 reads:

The same civil remedies provided by laws of the United States now or hereafter in force, for the purchasers of securities under any such laws, in interstate commerce, shall extend also to purchasers of securities under Chapter 14899, Laws of Florida, Acts of 1931, entitled "An Act regulating the sale of securities and to make uniform the law relating thereto, and to repeal statutes which are inconsistent herewith" and to acts amendatory thereof, either expressly or by implication.
[5] Section 6 reads:

When not in conflict with the constitution or laws of the United States, the courts of this State shall have the same jurisdiction over civil suits instituted in connection with the sale or offer of sale of securities under any laws of the United States, now or hereafter in force, as they may have under similar cases instituted under the laws of the State of Florida.
[6] Petitioner suggests that the Wilko decision would be different were it decided today. We are aware of the increased interest in finding alternatives to judicial litigation and that arbitration is a suitable method of resolving many disputes. Rehnquist, A Jurist's View of Arbitration, 32 Arb.J. 1 (1977). If the Court were to recede from Wilko by holding that arbitration agreements could be enforced to resolve disputes concerning interstate securities transactions, our decision would be different. In this connection, we note that the Court has recently agreed to review a case presenting either the issue here or, in a larger sense, the Wilko issue. Byrd v. Dean Witter Reynolds, Inc., 726 F.2d 552 (9th Cir.), cert. granted, ___ U.S. ___, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984).