824 F.2d 219
 Fed. Sec. L. Rep. P 93,335
Ji Sheunn James CHANG and Chin-Lan Chang,
Plaintiffs-Appellants, Cross-Appellees,
v.
Allison S. LIN and Merrill Lynch, Pierce, Fenner & Smith,
Inc., Defendants-Appellees,
Merrill Lynch, Pierce, Fenner & Smith, Inc.,
Defendant-Appellee, Cross-Appellant.
 Nos. 816, 908, Dockets 86-7944, 86-9050.
 United States Court of Appeals,
Second Circuit.
 Argued March 4, 1987.
Decided July 30, 1987.
 
 Victor A. Rossetti, Grosse, Rossetti, Chelus & Herdzik, Buffalo, New York City, for plaintiffs-appellants, cross-appellees.
 John T. Frizzell, Williams, Stevens, McCarville & Frizzell, Buffalo, New York, for defendant-appellee, cross-appellant.
 Before OAKES and WINTER, Circuit Judges, and BONSAL, Senior District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 The plaintiffs commenced this action in September 1984 against the brokerage firm of Merrill Lynch, Pierce, Fenner & Smith, Inc. and Allison Lin, a former employee of Merrill Lynch. The plaintiffs' principal allegation is that Lin mismanaged their securities account by engaging in "churning," the excessive trading in securities for the purpose of generating commissions. They further contend that Merrill Lynch failed properly to supervise Lin's handling of their account. The complaint alleges that the defendants' actions violated the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq. (1982) (" '33 Act"); the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78a et seq. (1982) (" '34 Act"); the rules of the Securities Exchange Commission; and New York common law.
 
 
 2
 Merrill Lynch moved to compel arbitration of the plaintiffs' claims under the '34 Act, based on the arbitration clause of the customer agreement between the plaintiffs and Merrill Lynch. The plaintiffs cross-moved to bar or stay any such arbitration.
 
 
 3
 On October 27, 1986, the district court entered an order compelling arbitration of the plaintiffs' state law claims and staying litigation of their federal securities claims pending the outcome of that arbitration. The plaintiffs contend on appeal that they should not be required to arbitrate their state claims or to defer litigation of their federal claims. The defendants maintain on cross-appeal that the district court should have compelled arbitration of the claims brought under the '34 Act.
 
 DISCUSSION
 
 4
 * The plaintiffs first contend that they should not be required to arbitrate their state law claims because the findings in the arbitration proceeding might be given collateral estoppel effect in any subsequent litigation of federal claims. A similar argument was rejected by the Supreme Court in Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221-23, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). The Court noted that under general collateral estoppel principles "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims." Id. at 222, 105 S.Ct. at 1243. Furthermore, the Court recognized that lower federal tribunals faced with arbitrators' decisions on related state claims "may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." Id. at 223, 105 S.Ct. at 1243.[1] Accordingly, given the ability of federal courts to fashion preclusion rules that protect federal interests, the Court held that "neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is required in order to assure that a precedent arbitration does not impede a subsequent federal-court action." Id. We likewise hold that the district court was not required in the instant case to refrain from ordering arbitration of the plaintiffs' state law claims.
 
 II
 
 5
 Plaintiffs have alleged violations of both the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq. (1982), and the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78a et seq. (1982). In their cross-appeal, defendants contend that the district court erred in denying their motion to compel arbitration of their claims under the '34 Act. In denying this motion, the district court relied on our decision in McMahon v. Shearson/American Express, Inc., 788 F.2d 94, 96-98 (2d Cir.1986), which held that claims under Section 10(b) of the '34 Act and under Rule 10b-5 were not arbitrable. Since the argument of this appeal, however, the Supreme Court reversed our decision in McMahon and held that claims under the '34 Act may be subject to arbitration. Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Accordingly, we reverse the order of the district court insofar as it denied defendants' motion to compel arbitration of the plaintiffs' '34 Act claims.[2]III
 
 
 6
 Based on Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the parties agreed in the district court that plaintiffs' claims under the '33 Act were nonarbitrable. Although the Supreme Court in McMahon questioned the rationale underlying Wilko, the Court nevertheless did not overrule that decision, and it continues to govern us. We must therefore address plaintiffs' contention that the district court erred in staying their '33 Act claims pending the arbitration of their state law claims.
 
 
 7
 A plaintiff has the right to litigate a '33 Act claim in a federal court notwithstanding any arbitration agreement with the defendant. See Wilko. This right is substantially diminished if such claims must lay dormant until other claims arising out of the same series of events have been arbitrated. Evidence supporting the federal claims may become stale or unavailable prior to the conclusion of the arbitration. Moreover, delay generally works to the advantage of defendants who may well be inclined to prolong the arbitration unnecessarily in the hope that plaintiffs ultimately will be forced to abandon their nonarbitrable claims. If nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs alleging fraud in securities transactions face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court.
 
 
 8
 We therefore cannot reconcile the routine staying of the '33 Act claims with what was interpreted in Wilko to be a congressional declaration that agreements to arbitrate such federal claims are unenforceable. See 346 U.S. at 437, 74 S.Ct. at 188. Rather, we believe that an agreement to arbitrate state claims and arbitrable federal claims usually should have no effect on the pursuit of overlapping nonarbitrable federal securities claims.
 
 
 9
 We acknowledge that we have previously allowed courts great discretion in staying nonarbitrable state and federal claims pending arbitration of related claims. See, e.g., NPS Communications, Inc. v. Continental Group, Inc., 760 F.2d 463, 466 (2d Cir.1985); Nederlandse ErtsTankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440 (2d Cir.1964). In contrast, other courts have recognized the merit in generally allowing arbitration and federal litigation to proceed simultaneously. See, e.g., Girard v. Drexel Burnham Lambert, Inc., 805 F.2d 607, 611 (5th Cir.1986) (holding in light of Dean Witter that district court properly refused to stay litigation of federal securities claims pending arbitration of pendent state claims); Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976) (district court properly ordered that antitrust claims proceed to trial and that remaining claims be submitted to arbitration); Roueche v. Merrill Lynch Pierce Fenner & Smith, Inc., 554 F.Supp. 338, 340 (D.Haw.1983) (declining to stay litigation of federal securities claims pending arbitration of state claims because stay "would be difficult to reconcile with the exercise of exclusive federal jurisdiction over federal securities laws"); Horne v. New England Patriots Football Club, Inc., 489 F.Supp. 465, 470 (D.Mass.1980) ("Where the arbitration proceeding cannot dispose of or even deal with the [federal age] discrimination claims, and where the policy of vindicating an individual's independent statutory right of protection against age discrimination is implicated, ... a stay of judicial proceedings is improper.") (footnote omitted). At least where '33 Act claims are concerned, we now hold that arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation.
 
 
 10
 Accordingly, we agree with Justice White's concurrence in Dean Witter that
 
 
 11
 once it is decided that [litigation of federal securities claims and arbitration of pendent state claims] are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, ... the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course.
 
 
 12
 470 U.S. at 225, 105 S.Ct. at 1245 (White, J., concurring). The record in the instant case is devoid of any evidence to rebut the "heavy presumption" against the deferral of the plaintiffs' '33 Act claims. We therefore hold that the district court erred in staying the litigation of these claims pending the arbitration of pendent state claims.
 
 
 13
 Affirmed in part, reversed in part, and remanded.
 
 
 
 *
 The Honorable Dudley B. Bonsal, Senior District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Of course, our decision in Part III, infra, refusing to stay the litigation of federal securities claims pending the outcome of arbitration, decreases the likelihood that preclusion issues will arise in these circumstances
 
 
 [2]
 The plaintiffs also argue that the arbitration clause of their customer agreement should be set aside because it violates Rule 15c2-2, 17 C.F.R. Sec. 240.15c2-2 (1986). That rule provides in pertinent part that
 [i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 [17]
 C.F.R. Sec. 240.15c2-2(a). Plaintiffs contend that the arbitration clause of the customer agreement, which provided that "any controversy between us arising out of your business or this agreement shall be submitted to arbitration," purported to require the arbitration of their federal securities claims
 Tension exists, of course, between Rule 15c2-2 and the Supreme Court's decision in McMahon. As the McMahon court noted, "Rule 15c2-2 was premised on the Commission's assumption, based upon court of appeals decisions following Wilko [v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) ], that agreements to arbitrate Rule 10b-5 claims were not, in fact, arbitrable." 107 S.Ct. at 2341 n.3 (quoting Brief for the Securities and Exchange Commission as Amicus Curiae at 18 n.13, Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). In any event, we need not address the status of Rule 15c2-2 after McMahon, because the rule, by its own terms, does not apply to the instant case. Specifically, a broker has not violated the rule with respect to any customer agreement entered into before December 28, 1983, the effective date of the rule, unless the broker thereafter failed to inform its customer that federal securities claims need not be submitted to arbitration. See 17 C.F.R. Sec. 240.15c2-2(c). The plaintiffs entered into their customer agreement with Merrill Lynch on May 3, 1982, some 19 months before the regulation took effect. However, they have not alleged that Merrill Lynch failed to inform them after December 28, 1983, that they were not required to arbitrate their federal securities claims. They clearly were aware of their right to pursue such claims in a federal court by September 4, 1984, the date on which they commenced this action. Accordingly, we have no reason to conclude that Merrill Lynch violated Rule 15c2-2 with respect to the plaintiffs.