Gary E. **RUSSOLILLO,** Individually
and as Trustee

v.

**THOMSON McKINNON
SECURITIES, INC., et al.**

Civ. No. H–88–277 (PCD).

United States District Court,
D. Connecticut.

Sept. 15, 1988.

Robert A. White, Elizabeth J. Stewart, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for plaintiff.

Peter C. Schwartz, Gordon, Muri & Foley, Hartford, Conn., for Charles H. Howard, III.

Philip S. Walker, Day, Berry & Howard, Hartford, Conn., for Thomson McKinnon Securities, Inc. and James Daly.

John Huot, Tyler, Cooper & Alcorn, New Haven, Conn., for Michael Devine.

## RULING ON MOTION TO COMPEL ARBITRATION

DORSEY, District Judge.

*Facts and Procedural History*

Plaintiff, Gary E. Russolillo, brings this action against two brokers, Charles H. Howard, III and Michael Devine, and their employer, Thomson McKinnon Securities, Inc. ("McKinnon"), to recover damages and to rescind various securities purchases made through two accounts with McKinnon. Plaintiff alleges that the individual defendants were not registered with the Connecticut Banking Commissioner as required by Connecticut law and that he is entitled, pursuant to Section 36–498 of the Connecticut Uniform Securities Act, to damages from the purchase through those accounts of any securities that were sold at a loss and to rescind purchases of any securities he has not sold.

Defendants move to compel arbitration and to stay or dismiss this action on the ground that the account agreements, allegedly signed by Russolillo, contained arbitration clauses which must be enforced under the Federal Arbitration Act, 9 U.S.C. §§ 1–14.

*Discussion*

### I.

Section 2 of the Arbitration Act provides in relevant part that:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Arbitration Act "was intended to 'revers[e] centuries of judicial hostility to arbitration agreements.'" *Shearson/American Express v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510, 94 S.Ct. 2449, 2452, 41 L.Ed. 2d 270 (1974). It is an expression of a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See also McMahon*, 107 S.Ct. at 2337; *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). " '[T]he act was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or, ... by state courts or legislatures.'" *Southland Corp.*, 465 U.S. at 13, 104 S.Ct. at 859, quoting *Metro Indus. Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 387 (2d Cir.1961). The Act creates a body of federal substantive law and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941. *See also McMahon*, 107 S.Ct. at 2337. "The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims." *Id.*

Plaintiff asserts that he does not recall signing the account agreements, that the signatures do not appear to be his, and that he did not agree to arbitrate any disputes regarding amounts. Plaintiff's Affidavit ¶¶ 3, 8.

Paragraph 6 of both account agreements state:

[I]t is agreed that any dispute, claim or controversy between [Russolillo] and

[McKinnon] which does not arise out of the federal securities laws shall be resolved by arbitration....

In considering a motion to compel arbitration, the court's first inquiry is whether the parties agreed to arbitrate the dispute. *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3353; *see also Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967) (stating that a federal court may only consider issues relating to the making and performance of the agreement to arbitrate itself when considering an application for a stay pending arbitration under 9 U.S.C. § 3). Section 4 of the Federal Arbitration Act provides that the court shall order the parties to proceed to arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. ... Where such an issue is raised, the party alleged to be in default may, ... on or before the return day of the notice of application, demand a jury trial on such issue...." 9 U.S.C. § 4. Parties cannot be compelled to arbitrate if no valid agreement to arbitrate exists. *See McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir.1980) (concluding that district court erred in not holding a trial on the issue of whether the defendants were bound by the agreement to arbitrate); *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir.1980) (remanding to determine whether an agreement was made and, if so, whether it included an agreement to arbitrate where plaintiff claimed there was no "meeting of the minds"); *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir.1972) (remanding to determine whether parties had entered into a valid agreement to arbitrate); *Donato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 663 F.Supp. 669 (N.D.Ill. 1987) (ordering summary disposition of whether the document contained forged signatures); *Dougherty v. Mieczkowski*, 661 F.Supp. 267 (D.Del.1987) (ordering further proceedings on the existence of an agreement to arbitrate where plaintiffs alleged their signatures were forged); *cf. Interbras Cayman Co. v. Orient Victory Shipping*, 663 F.2d 4, 7 (2d Cir.1981) (remanding for trial on whether agency relationship existed to bind defendant to arbitrate).

Ordinary principles of contract law determine whether a valid agreement exists. *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3353. *McAllister Bros.*, 621 F.2d at 522; *Par–Knit Mills*, 636 F.2d at 54–55; *Dougherty*, 661 F.Supp. at 275. "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3354. Courts must also determine whether the agreement to arbitrate includes a provision to arbitrate the claims in question. *Id.* at 628, 105 S.Ct. at 3354; *McAllister Bros.*, 621 F.2d at 522. Here, the arbitration clause, if valid, is easily broad enough to encompass plaintiff's nonregistration claims.

Such an agreement must first be found to have been made. Plaintiff's affidavit sufficiently raises an issue of fact as to the existence of an agreement including the arbitration clause. 9 U.S.C. § 4. However, plaintiff has not made a timely demand for a jury trial of that issue. *Id.* Accordingly, this matter shall be heard on October 3, 1988, at 2:00 p.m., for the sole purpose of determining whether' the account agreements were signed by him or by an agent with authority to sign them on his behalf. *See, e.g., Interocean Shipping Co.*, 462 F.2d at 677 (remanding for trial on whether agents of defendants had authority to act for them); *Dougherty*, 661 F.Supp. at 275 (discussing issue of ratification of arbitration agreement); *Interbras Cayman Co.*, 663 F.2d at 7 (genuine issue of fact as to agency relationship requires trial).

## II.

Without intimating a view of the outcome of such a hearing, it is appropriate to reach the issue of whether defendants

are entitled to compel arbitration if an arbitration agreement was entered into by the plaintiff. The parties have briefed the issue extensively and a resolution favorable to plaintiff would obviate the need for a hearing. On the other hand, resolution favorable to defendants would permit the case to go forward on the merits immediately after the hearing, either in arbitration or in this court.

Plaintiff first asserts that the account agreements are illegal and revocable under Conn.Gen.Stat. § 36–498(g)[1] and thus are excepted from the coverage of the Arbitration Act. However, § 36–498(g) does not by its terms revoke any contract, the performance of which would violate a provision of the Connecticut Securities Act. Rather, that section merely bars one who enters such a contract with knowledge of the illegality from basing any suit on the contract. In short, § 36–498(g) codifies the equitable doctrine of unclean hands. As defendants are not basing any cause of action on the contract, § 36–498(g) is inapplicable.

Moreover, even if the account agreements as a whole are unenforceable under the Connecticut Uniform Securities Act, the arbitration clause is severable from the underlying contract as a matter of federal law. *Kroog v. Mait,* 712 F.2d 1148, 1150–51 n. 1 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); *S.A. Mineracao da Trindade–Samitri v. Utah Int'l,* 576 F.Supp. 566, 570 (S.D.N.Y. 1983), *aff'd,* 745 F.2d 190 (2d Cir.1984); *see Prima Paint Corp.,* 388 U.S. at 402–04, 87 S.Ct. at 1805–06. An allegation of general illegality or fraudulent inducement of the contract, not connected to the making of the agreement to arbitrate itself, is not sufficient to prevent application of Section 3 of the Arbitration Act. *Prima Paint Corp.,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06; *Kroog,* 712 F.2d at 1151 n. 1. Thus, since the claim of illegality or violation of public policy is not specifically directed to the arbitration clause itself, the broad arbitration clause requires arbitration of the claim that the contract as a whole was made illegally. *Cf. Prima Paint Corp.,* 388 U.S. at 402, 404, 87 S.Ct. at 1805, 1806. That claim is inextricably tied to the merits of plaintiff's claims for damages and rescission based on alleged violations of § 36–474. *See Utah Int'l,* 576 F.Supp. at 571. Thus, like the claims for damages and rescission, the merits of plaintiff's claim that McKinnon violated § 36–474(b) in entering into the contract are for arbitration to determine.

■ Plaintiff also argues that Conn.Gen. Stat. § 36–498(h) renders the arbitration agreement void. Section 36–498(h) provides that:

> Any condition, stipulation, or provision binding any person acquiring any security or receiving investment advice to waive compliance with any provision of this chapter or any regulation or order hereunder is void.

Plaintiff asserts that the arbitration clause at issue is of the type prohibited by the statute.[2] Plaintiff notes by way of analogy that identical language in Section 14 of the Federal Securities Act of 1933, 15 U.S.C. § 77n, invalidates an agreement to arbitrate claims based upon violations of the securities registration provisions of the 1933 Act similar to plaintiff's claims under the state broker registration statutes. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182,

---

1. Section 36–498(g) provides:
   No person who has made or engaged in the performance of any contract in violation of any provision of this chapter or any regulation or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any cause of action on the contract.

2. Plaintiff cites no case in which a Connecticut court has construed § 36–498(h) as invalidating an arbitration clause. However, in the absence of controlling authority, it is assumed without deciding that Connecticut courts would follow other states which have interpreted similar provisions of their versions of the Uniform Securities Act to void arbitration clauses in brokerage agreements. *See, e.g., Missouri ex rel. Geil v. Corcoran,* 623 S.W.2d 557, 559 (Mo.Ct.App. 1981); *Martin v. ITM/Int'l Trading & Marketing Ltd.,* 343 Pa.Super. 250, 494 A.2d 451, 453–54 (1985).

**1046**

98 L.Ed. 168 (1953); *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir.1987). Defendant argues that § 36–498(h) is preempted by the Arbitration Act.

The Arbitration Act creates a substantive rule of law enforcing arbitration agreements. *See Southland Corp.*, 465 U.S. at 16, 104 S.Ct. at 861. In the absence of a congressionally-created exception, it preempts all state rules of law to the contrary. *Id.* at 10–11, 104 S.Ct. at 858.

The Seventh Circuit considered a case almost identical to the present one in *Kroog*, 712 F.2d 1148. In *Kroog*, defendants allegedly violated the registration requirements of the Wisconsin Uniform Securities Law, Wisc.Stat. §§ 551.31(1) and (2), 551.59(1). The arbitration agreement in the brokerage contract in question conflicted with a non-waiver provision in the Wisconsin Uniform Securities Law, § 551.59(8), which is substantively identical to the non-waiver provision in Conn.Gen.Stat. § 36–498(h). *See Kroog*, 712 F.2d at 1150. *Kroog* found "a naked and irreconcilable conflict between a precise federal mandate to arbitrate and a state provision which prevents arbitration. Once that conflict has been described, we need not no further, for federal preemption in such cases is automatic." Id. at 1154, citing *Pacific Gas & Elec. Co. v. State Energy Resource Conservation & Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), and *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 165, 98 S.Ct. 988, 994, 998, 55 L.Ed.2d 179 (1978); *accord Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508 (3d Cir.1988) (holding that Arbitration Act pre-empts provision of Pennsylvania Securities Act which would have invalidated agreement to arbitrate).

Neither *Wilko* nor *Chang* support plaintiff's argument that the state provision is not pre-empted. Both *Kroog* and *Osterneck* noted that *Wilko* involved the resolution of conflicting federal statutes and thus does not apply where a state statute stands in the way of the clearly-expressed congressional policy in favor of arbitration. *See Kroog*, 712 F.2d at 1154; *Osterneck*, 841 F.2d at 511, citing *Southland Corp.*,

465 U.S. at 16 n. 11, 104 S.Ct. at 861 n. 11. It is plaintiff's burden to show that Congress intended to exempt his Connecticut Securities Act claims from the general sway of the Arbitration Act. *See McMahon*, 107 S.Ct. at 2337–38; *cf. Osterneck*, 841 F.2d at 511, 512 (weight of precedent "militates against following *Wilko* to a finding that Congress intended to exempt state securities claims" from Arbitration Act). That burden has not been met. While *Chang* reaffirmed the vitality of *Wilko* in this circuit, holding that claims under the 1933 Securities Act remain nonarbitrable, 824 F.2d at 222, nothing in *Chang* would permit this court to fashion an exception to the Arbitration Act for plaintiff's state securities claims.

Accordingly, plaintiff's action shall be stayed pending arbitration unless he prevails on the issues to be determined at the hearing pursuant to Section I of this ruling.

SO ORDERED.