**Jose L. CASTRO, M.D., Plaintiff,**

v.

**MARINE MIDLAND BANK, N.A., and Ovest Brokerage Service, Division of Marine Midland Securities, Inc., Defendants.**

**No. 88 CIV. 4162 (SWK).**

United States District Court, S.D. New York.

Sept. 19, 1988.

Alfred Weintraub by Richard Harrison, Mineola, N.Y., for plaintiff.

Lane and Mittendorf by Eric P. Sullivan, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings this action against defendant for alleged violations of the Securities Act of 1933, 15 U.S.C. § 77v, the Securities Act of 1934, 15 U.S.C. § 78aa, the Investment Advisors Act, 15 U.S.C. § 80b–14, the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various state laws. Plaintiff moved by order to show cause for an order staying arbitration, which defendants have demanded, and defendants have cross-moved for an order compelling arbitration and staying the litigation pending the outcome of the arbitration. The issue before the Court is whether plaintiff was fraudulently induced to sign customer agreements that included arbitration clauses. The parties appeared before the Court for an evidentiary hearing at which the testimony of plaintiff was heard.

## BACKGROUND

Plaintiff is a medical doctor with limited experience in the securities markets. In

January, 1987, plaintiff met with a fellow doctor, George Lin, to discuss the possibility of making certain investments through Lin. A sister of another fellow doctor, a Dr. Peng, introduced Lin to plaintiff in 1984. A Dr. Nyung arranged the January, 1987 meeting between Lin and plaintiff. Both Peng and Nyung had spoken of Lin's success in the financial markets and encouraged plaintiff to speak with him. Lin came to plaintiff's house for this 1987 meeting and showed plaintiff a computer printout purporting to indicate Lin's successes. Lin did not show plaintiff a prospectus nor any other printed materials. Plaintiff characterized the meeting as one between friends. Plaintiff could not recall if Lin explained the portfolio would include option accounts on margin, but plaintiff stated that Lin did not tell him these were high-risk investments.

Plaintiff decided to open an account through Lin with defendant Ovest Brokerage Services ("Ovest"), and Lin mailed plaintiff forms for plaintiff to complete. Lin had filled his name and personal information in on certain of the forms (1) designating Lin as plaintiff's agent and attorney-in-fact to trade in securities and commodities, *see* Exhibit E ("Trading Authorization Limited to Purchases and Sales of Securities and Commodities"), and (2) granting Lin discretionary authority over an options account, *see* Exhibit F ("Option Information and Agreement Form"). Lin had also circled the places where plaintiff was to sign.

Plaintiff filled out the forms, without discussing them with either Lin or Ovest. Exhibit A is a general application form on which plaintiff gave some personal information. Exhibit B, signed at the bottom by plaintiff, is an Account Agreement that at ¶ 10 includes an arbitration clause. Exhibit C, also signed by plaintiff, includes an arbitration clause at ¶ 16. Plaintiff signed a trading authorization form, giving Lin authority to trade on the account. Exhibit E. On a form entitled "Option Information and Agreement Form", exhibit F, plaintiff indicated his net worth as $255,000 and his approximate annual salary as over $100,000. He noted his other investments: $15,000 in stocks and bonds, which at the hearing he indicated were in a Keogh plan with Shearson–Lehman, and $100,000 in real estate, which plaintiff at hearing indicated was invested through a limited partnership. He noted on the form that he "seldom" traded in these accounts. In the section entitled "Desired Type of Option Trading", plaintiff checked off every available box, which authorized Lin to buy and write puts and calls, spreads and combinations. Plaintiff testified that he checked off all the boxes, even though he did not really understand what all the terms meant, in order to facilitate Lin's trading on his behalf. Exhibit G, which is untitled and unsigned, appears to be the reverse of the Option Information and Agreement Form to which plaintiff subscribed. This agreement states that the customer has received, read and understood the most recent prospectus. Plaintiff testified that he never received or read any prospectus before or after signing this agreement. The agreement also states "Important Risk Factors" indicating the dangers involved in making these option investments. Plaintiff testified that neither Lin nor anyone from Ovest discussed these risk factors with him. Plaintiff sent the forms to Ovest and Ovest notified him by letter that the account was opened. During cross-examination, plaintiff admitted that all the information he provided in the forms was accurate, that he had general knowledge prior to his meeting with Lin concerning margin and option accounts and that he read all the forms completely, including the arbitration clauses. He said he understood generally what arbitration was, but assumed that it was not significantly different than litigation.

Plaintiff also stated during cross-examination that he made these investments with Lin because Lin's other investment activities often produced returns of thirty to fifty percent. Plaintiff said that his other investments—the Keogh account and the limited partnership investments—had an average return of approximately nine to ten percent. Plaintiff admitted that he understood at the time he opened his account with Ovest that the investments were risky

since the potential return was so much higher than his other investments. He believed the risk was limited to losing his principal.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 4, requires this Court to compel arbitration to the extent of the parties' written agreement to arbitrate, unless the making of the agreement is put into question. *See Rush v. Oppenheimer & Co.*, 681 F.Supp. 1045, 1049 (S.D.N.Y.1988) ("a court may order arbitration only when the party opposed to arbitration has not claimed that the arbitration agreement itself was fraudulently procured."). Since plaintiff's papers suggested that the agreement may have been procured by fraud, the Court held a hearing to determine this limited issue. *See Prima Paint Corp. v. Flood & Conklin Mfg Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Rush, supra*, 681 F.Supp. at 1048.

▮▮▮ Plaintiff argues that the arbitration agreement should not be enforced since the entire transaction was tainted with fraud. Plaintiff specifically points to the various omissions and misleading nature of Lin's involvement with plaintiff.[1] The Court concludes that plaintiff has not established that the arbitration clauses were procured by fraud. The elements of fraud in New York are (1) misrepresentation, concealment or non-disclosure of a material fact, (2) intent to deceive, (3) justifiable reliance and (4) injury. *Idrees v.*

*American Univ. of the Caribbean*, 546 F.Supp. 1342, 1346 (S.D.N.Y.1982) (citations omitted).[2] Plaintiff did not identify any misrepresentations by Lin or defendants which might have deceived plaintiff about the existence or effect of the arbitration clause. Plaintiff read the clauses, understood them generally and voiced no opposition to them. Plaintiff admits he signed these agreements. Since "brokers are not required as a matter of law to disclose or explain arbitration clauses to the customer", *Rush, supra*, 681 F.Supp. at 1052 (citations omitted), plaintiff cannot rely on Lin's or defendants' failure to explain these clauses. The Court accordingly denies plaintiff's motion to stay arbitration.

▮▮▮ The last issue to confront is which claims are subject to arbitration. The arbitration clauses in question here state in relevant part:

Any controversy between you and the undersigned arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration, ... Disputes or controversies that arise under federal securities laws can be resolved through litigation in the courts ...

Plaintiff's first cause of action seeks relief pursuant to a smorgasbord of federal and state laws.[3] Defendants agree that the Court should, pursuant to the terms of the arbitration clauses, retain jurisdiction over plaintiff's claims for relief under the Securities Acts of 1933 and 1934, and the Court agrees. Defendants argue that plaintiff has no private right of action under the

---

1. This Court agrees with the decision in *Rush, supra*, that the Court has jurisdiction to consider the validity of the arbitration agreement even though the party resisting arbitration argues that the entire agreement, as opposed to the arbitration clause exclusively, is tainted by fraud. 681 F.Supp. at 1049 ("Neither the [Federal Arbitration] Act nor the Court's analysis in *Prima Paint* support the conclusion that the allegation of fraud must be directed exclusively at the arbitration clause and not at the overall contract."). Nonetheless, plaintiff must demonstrate that whatever fraud occurred misled plaintiff as to the arbitration agreement itself. *Id.* at 1053. The *Rush* Court seems to be saying that the Court may consider allegedly fraudulent activity involving the agreement as a whole in determining whether the arbitration clause in particular was induced by fraud. *See id.*

2. Issues relating to the formation of an agreement to arbitrate such as fraud are to be determined by looking to state law, even though federal common law generally governs the scope and enforceability of arbitration agreements. *Rush, supra*, 681 F.Supp. at 1046 n. 3 (citations omitted).

3. Plaintiff seeks relief under the Securities Acts of 1933 and 1934, the Rules of the New York Stock Exchange, American Stock Exchange and the National Association of Securities Dealers, and for relief under the common law theories of breach of fiduciary duty and common law fraud.

**1552**

rules of the stock exchanges and National Association of Securities Dealers. This Court agrees. These rules do not provide plaintiff with an implied right of action, *see Newman v. L.F. Rothschild,* 651 F.Supp. 160, 162–63 (S.D.N.Y.1986), and the Court will therefore dismiss that portion of count one that purports to state a claim directly under these rules.[4]

■ Finally, defendants argue that the RICO claim and the state law claims are subject to arbitration. Once again, the Court agrees. The state law claims clearly do not arise under the federal securities laws; neither does the RICO claim.[5] Accordingly, the Court orders that plaintiff submit these claims to arbitration.

■ The last question to consider is whether the litigation should be stayed pending a decision by the arbitrators. The Second Circuit recently held that "arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." *Chang v. Lin,* 824 F.2d 219, 223 (2d Cir.1987). Defendants argue that the litigation should be stayed because the central issue to be decided in the federal claims and in the claims subject to arbitration concern the suitability of the investments. Since the fraud alleged concerns violations of the NYSE and NASD rules, defendants continue, the Court should stay the litigation until the arbitrators reach a decision. The Court disagrees. First, defendants' arguments do not suggest the compelling circumstances contemplated by the Second Circuit in *Chang.* Second, since arbitration is a much faster process than litigation, the arbitrators will probably reach a decision long before this case is ready for trial. Third, staying the litigation may unduly prejudice plaintiff's ability to prosecute this case. *See Chang, supra,* 824 F.2d at 222. More fundamentally, while the Court welcomes any guidance the arbitrators are able to offer, the arbitrators findings as to state claims do not necessarily bind the Court's decision on the non-arbitrable federal claims. *Id.* at 221. Therefore, the Court orders that the parties proceed with the litigation of the federal claims over which this Court retains its jurisdiction.

CONCLUSION

The Court finds that plaintiff was not fraudulently induced to subscribe to the arbitration clauses. Therefore, the Court orders arbitration to the extent of the parties' agreement. The Court concludes that the agreement to arbitrate covers the RICO claim and the state law claims. The claims purportedly brought under the rules of the NYSE, AMEX and NASD are dismissed since these rules do not provide an independent cause of action. The Court retains jurisdiction over the claims brought under the 1933 and 1934 federal securities acts. The Court orders that litigation and arbitration proceed simultaneously.

SO ORDERED.

4. The Court notes, as did the *Newman* Court, that "[v]iolations of NYSE and NASD rules, however, may be probative in demonstrating a course of conduct amounting to fraud." 651 F.Supp. at 162–63.

5. Plaintiff did not argue that the RICO claim arose under the federal securities laws, even though some of the alleged predicate acts are violations of federal securities laws. The Court believes that the RICO claim does not arise under the federal securities laws as expressed in the arbitration agreement signed by plaintiff; instead, RICO is a separate cause of action with a separate statutory basis.