**MOBIL PETROCHEMICAL SALES AND SUPPLY CORPORATION, Mobil Polymers International, Ltd., and Nisso Petrochemicals Industries Co., Ltd., Plaintiffs,**

v.

**M/T BRIMANGER, her engines, tackle, apparel, etc., M/T ORKANGER, her engines, tackle, apparel, etc., in rem, Odfjell Westfal–Larsen (USA) Inc. and Odfjell Westfal–Larsen Tankers A/S & Co., in personam, Defendants.**

**No. 88 CIV. 5506 (SWK).**

United States District Court, S.D. New York.

April 17, 1989.

---

Waesche, Sheinbaum & O'Regan, P.C. by Donald M. Waesche, Stephen J. Sheinbaum, New York City, for plaintiffs.

Haight, Gardner, Poor & Havens by Brian D. Starer, Charles B. Anderson, Don P. Murnane, Jr., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This case was filed pursuant to the Court's admiralty and maritime jurisdiction. Plaintiffs have filed a petition to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and the terms of a contract between the parties, for damages allegedly suffered in the course of shipping petrochemical products to and from Japan and Saudi Arabia. Defendants do not dispute the existence of the agreement to arbitrate, but instead argue that petitioners in fact seek to arbitrate a claim against Dow Chemical Co., which is not a party to the Contract.

The relevant facts are not in dispute, except as noted below. In early May, 1986, Mobil Petrochemical Sales and Supply Corp. ("Mobil Petrochemical") and Odfjell Westfal–Larsen Tankers A/S & Co. ("Odfjell") entered into a Contract of Affreightment ("Contract") for the transportation of ethylene glycol. Petition at ¶ 4 and Exh. A. The Contract expressly incorporates a Mobil Tanker Voyage Charter Party, Article 29 of which provides for arbitration in broad terms: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration ..." The Contract states that arbitration is to take place in New York and that New York law shall govern. Exh. A to Petition at Article 15.

In early September, 1986, Mobil Petrochemical entered into a sales agreement with Nisso Petrochemicals Industries Co., Ltd. ("Nisso") by which Mobil Petrochemical agreed to sell and deliver 20,000 metric tons of glycol to Nisso. Petition at ¶ 7 and Exh. C. This agreement provides at clause 4.2 that Mobil Petrochemical retains title and risk of loss in the glycol until "the moment the Glycol passes the receiving tanks permanent receiving branch connections." *Id.* In early June, 1986, a cargo consisting of approximately 4932 metric tons of fiber grade mono-ethylene glycol was shipped from Saudi Arabia to Japan by Mobil Petrochemical on board the M/T Brimanger; Nisso was the consignee of the glycol. Petition at ¶ 8. Plaintiffs state that the cargo was shipped pursuant to the Contract and was sold by Mobil Petrochemical to Nisso pursuant to their sales agreement. During the course of the voyage, the glycol in tanks numbered 4CS and 3WS of the M/T Brimanger were contaminated by salt water.

Defendants contend that the quantity of cargo in tank number 3WS was shipped, not by Mobil Petrochemical, but instead by Dow Chemical Canada, Inc. ("Dow Canada") to Dow Chemical Japan, Ltd. ("Dow Japan"). Affidavit of Don P. Murnane, Jr., dated January 5, 1989, at ¶ 3. Instead, the glycol in tank 3WS was governed by Brimanger Bill of Lading 0002, dated June 7, 1986. *See* Exh. B to Murnane Affidavit. The space on the bill of lading for incorporation of a charter party is left blank. A Japanese surveyor company, AALL and Co., Ltd. ("AALL") surveyed and reported on the contamination to the glycol shipped aboard the Brimanger. The AALL survey report notes that the Mobil Petrochemical shipment, consigned to Nisso, was shipped in tanks 3CP, 3CS, 4CS and 7C, whereas the Dow Canada shipment, consigned to Dow Japan, was shipped in tanks 3WP, 3WS, 4CP and 11C. *See* Exh. C to Murnane Affidavit at 1. Upon arrival, according to the AALL survey report, the glycol on board the Brimanger was discharged into two receiving tanks rented to Nisso. *Id.* at 3. Another survey report, prepared by Shin Nihon Kentei Kyokai ("Shin"), explains that the damaged cargo in one of the two shore tanks, tank number 83, was

shifted to four other shore tanks, one at Chiba, two at Kawasaki and one at Osaka. *See* Exh. D to Murnane Affidavit. In these four tanks, undamaged glycol was blended with the damaged glycol in an attempt to lower the chloride levels to acceptable levels. *Id.* On the first page, the Shin survey report notes that the "final cargo receivers" are Nisso and Dow Japan, but lists Mobil Petrochemical as the "consignee". The Shin survey report estimates the loss due to the damages at ¥69,975,850, which amounts to slightly more than $423,000 using a June 26, 1987 yen to dollar conversion. *See* Murnane Affidavit at ¶ 9.

In July, 1986, another cargo of approximately 9439 metric tons of fiber grade mono-ethylene glycol was shipped from Saudi Arabia to Japan by Mobil Petrochemical on board the M/T Orkanger; Nisso was again the consignee and plaintiffs state that the shipment was pursuant to the Contract and the sales agreement with Nisso. Plaintiffs allege that the glycol in tank numbers 3S and 4S were contaminated with sea water. As to these claims, plaintiffs have demanded arbitration pursuant to the Contract, and defendants have stated, according to plaintiffs, that they will not submit voluntarily. Petition at ¶ 13.

## DISCUSSION

As this Court recently stated, the "Federal Arbitration Act, 9 U.S.C. § 4, requires this Court to compel arbitration to the extent of the parties' written agreement to arbitrate, unless the making of the agreement is put into question." *Castro v. Marine Midland Bank, N.A.*, 695 F.Supp. 1548, 1551 (S.D.N.Y.1988) (citing *Rush v. Oppenheimer & Co.*, 681 F.Supp. 1045, 1049 (S.D.N.Y.1988)). Neither party questions the validity of the arbitration agreement. The only question presented is whether plaintiffs can compel arbitration of the damages resulting from the damage to tank number 3WS aboard the Brimanger since Dow Canada, and not Mobil Petrochemical, was the responsible shipper. As a preliminary matter, the Court notes that defendants have not contested the arbitrability of the claims arising out of the shipment of glycol on the Orkanger. Accord-

ingly, arbitration of these claims, designated as causes of action two and four in the complaint, is ordered. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217–18, 105 S.Ct. 1238, 1240–41, 84 L.Ed.2d 158 (1985) (court should compel arbitration of those claims which are arbitrable, even if all claims are not).

■ Defendants argue that plaintiffs are seeking to recover for costs incurred in refining a portion of the damaged glycol cargo belonging to Dow Canada and Dow Japan, and contend that plaintiffs may not do so since neither Dow company is a party to the Contract. Memorandum in Opposition at 1. As a general rule, arbitration agreements are to be interpreted like any other contractual agreement. *Fairmont Shipping (H.K.), Ltd. v. Primary Industries Corp.*, No. 86 Civ. 3668 (SWK), slip op. at 5, 1988 WL 7805 (S.D.N.Y. January 21, 1988) (citations omitted). Since arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir.1983) (quoting *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980)). Doubts concerning arbitrability are decided in favor of arbitration. *Id.*

■ Defendants argue that plaintiffs lack standing to arbitrate claims relating to cargo and parties not subject to the Contract. In addition, defendants point out that the arbitration clause only covers disputes arising out of the charter, which is between Mobil Petrochemical and Odfjell, and thus a dispute involving the Dow companies would not be arbitrable. Plaintiffs respond to this argument by stating that it presents only a factual question and does not contradict plaintiffs' assertion that the claims are arbitrable. The Court agrees.

Defendants agreed to arbitrate any claims arising out of the charter and do not contest the fact that plaintiffs' claim for salt water damage to the glycol in tank 4CS aboard the Brimanger falls within the scope of the arbitration agreement. The fact that glycol from tank 3WS, belonging

to Dow Canada and destined for Dow Japan, was intermixed with Mobil Petrochemical's damaged glycol, as well as undamaged glycol, does not change this result. Plaintiffs are not seeking to compel Dow Canada or Dow Japan to arbitrate; if they were, defendants' arguments would be more pertinent. To the extent plaintiffs seek recovery for damages to cargo belonging to the Dow companies, it will be the province of the arbitrators to apportion damages properly. Nonetheless, the dispute between plaintiffs and defendants, with respect to the contamination of Mobil Petrochemical's cargo aboard the named ships, fall within the scope of the arbitration clause.

## CONCLUSION

For the reasons stated above, the Court grants plaintiffs' petition to compel arbitration. Arbitration is ordered.

SO ORDERED.