**Terrance PREVOST, Plaintiff,**

v.

**BURNS INTERNATIONAL SECURITY SERVICES CORPORATION A/K/A Borg–Warner Protective Services, Defendant.**

No. CIV. A. G–00–520.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 21, 2000.

Ian Scharfman, Houston, TX, for Terrance Prevost, plaintiffs.

Thomas W. Duesler, Harris Lively et al, Beaumont, TX, for Burns International Security Service Corporation aka Borg–Warner Protective Services, defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

KENT, District Judge.

Plaintiff Terrance Prevost brings this action against his employer, Burns International Security Services Corporation, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. Now before the Court is Defendant's Motion to Dismiss, filed October 16, 2000. For the reasons stated below, Defendant's Motion to Dismiss is **DENIED**.

### I. FACTUAL SUMMARY

Plaintiff is an African–American male, who has filed suit alleging discrimination by his employer in violation of Title VII of the Civil Rights Act. Prior to beginning work, Plaintiff is alleged by Defendant to have signed a "Pre–Dispute Resolution Agreement" ("Arbitration Agreement"). The Arbitration Agreement provides:

> In consideration of the Company employing you, you further agree that, in the event that you seek relief in an agency or court of competent jurisdiction for a dispute covered by this Agreement, the Company may, at any time within 90 days of the service of your complaint upon the Company, at its sole

option, require all or part of the dispute to be arbitrated by one arbitrator in accordance with the rules of the American Arbitration Association governing labor arbitration.

The Arbitration Agreement covers "all matters directly or indirectly related to your recruitment, hire, employment or termination ... including, but not limited to, claims involving laws against discrimination." Defendant has filed a Motion to Dismiss Plaintiff's lawsuit based upon the applicability of this Arbitration Agreement. However, the parties now dispute the validity of the Arbitration Agreement, arguing over whether Plaintiff actually signed the agreement. Undeniably, the Arbitration Agreement bears a signature in Plaintiff's name. Plaintiff swears by affidavit, however, that he never signed the agreement and that the signature seen, though in his name, is not of his hand.

### II. ANALYSIS

At the outset, the Court observes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of Am. Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412–13 (5th Cir.1984). The Court, moreover, dutifully follows the four guiding principles established by the United States Supreme Court regarding arbitrability. First, and of crucial relevance to the matter now before the Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Second, unless the parties "clearly and

unmistakably provide otherwise, the question of [arbitrability] . . . is to be decided by the court." *Id.* at 649, 106 S.Ct. at 1418. Third, in deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 649, 106 S.Ct. at 1419. Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)). An express provision excluding a particular grievance from arbitration may, however, overcome this presumption. *See id.*, 106 S.Ct. at 1419.

■ When confronted with the question of arbitrability, a District Court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chemical & Atomic Workers International Union Local 4–227 v. Phillips 66 Co.*, 976 F.2d 277, 278 (5th Cir.1992). This determination mandates two specific inquiries. The Court first asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the dispute in question falls within the scope of the agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). Ordinary state contract law will generally guide the Court in ruling on arbitrability. *See id.* at 258. However, while the Court applies state contract law, it will nevertheless give "'due regard . . . to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Id.* (quoting *Volt Information Sciences*, 489 U.S. at 475–76,

109 S.Ct. at 1253–54). Here, the Court need make only the first of these two determinations, that is whether a valid agreement to arbitrate exists.[1]

■ In order for a court to order arbitration, there must be a valid agreement to arbitrate. *See Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir.1990) ("The Federal Arbitration Act requires a judge to refer a matter to arbitration 'upon being satisfied that the issue involved . . . is referable to arbitration under [a written arbitration agreement].'"). Thus, if Plaintiff did not sign the Arbitration Agreement, it obviously cannot be valid. *See id.* at 993–94 (affirming a district court's decision not to refer a matter to arbitration when the defendant produced no evidence that the plaintiff had signed an agreement to arbitrate); *Monk v. Perdue Farms, Inc.*, 12 F.Supp.2d 508, 508–509 (D.Md.1998) (holding that a court, not the arbitrator, must resolve whether a signature on an arbitration agreement is a forgery); *Donato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 663 F.Supp. 669, 676–77 (N.D.Ill. 1987) (declining to stay case for arbitration until the court had resolved a forged signature issue); *accord Russolillo v. Thomson McKinnon Securities, Inc.*, 694 F.Supp. 1042, 1043–1044 (D.Conn.1988); *Austin v. A.G. Edwards & Sons, Inc.*, 349 F.Supp. 615, 617 (M.D.Fla.1972). The Defendant in this case maintains that it is ludicrous for Plaintiff to argue that he did not sign the Arbitration Agreement. However, as Plaintiff has pointed out, a review of the documents submitted by Defendant, which allegedly bear Plaintiff's signature, seems to show two different types of signatures. One type is characterized by a more flowery style, while the other appears to be more compressed, with less distinct lettering. The difference becomes even more obvious when the documents are compared

---

1. Plaintiff does not dispute that his claims would fall within the scope of the Arbitration Agreement if the agreement were otherwise valid. Plaintiff, however, does argue that Defendant has failed to timely request arbitration under the terms of the alleged agreement. The Court makes no comment on this issue, as Plaintiff has stated that he will press this argument, if required, before the arbitrator.

to the signatures seen on Plaintiff's driver's license and his social security card, which the Court treats as exemplars. Of course it is equally possible that Plaintiff signs his name in different manners, or that these two signatures are simply a product of the spacing requirements available for a signature, or even that the differences were caused by the type of writing utensil used by the signatory.

In light of the parties' dispute, what is apparently called for is a brief trial on the merits, limited to the singular issue of whether the signature appearing on the Arbitration Agreement is that of the Plaintiff. *See* 9 U.S.C. § 4 (calling for a trial on the merits when "the making of the arbitration agreement ... be in issue"); *see also Jolley,* 904 F.2d at 993–94; *Russolillo,* 694 F.Supp. at 1044. Contrary to Defendant's doomsday prediction, this decision does not open the door to every plaintiff who has signed an unwanted arbitration agreement to "disavow his signature" and thus make arbitration agreements essentially unenforceable. *See Chastain v. Robinson–Humphrey Co. Inc.,* 957 F.2d at 851, 854–55 (11th Cir.1992) (recognizing but dismissing this concern). In an effort to limit meritless claims of invalidity, the Fifth Circuit has held that a party seeking to avoid arbitration must bear the initial burden of production to create a validity fact issue. *See T & R Enters., Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1278 (5th Cir.1980); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154–55 (5th Cir. 1992). Thus, Plaintiff must make " 'an unequivocal denial that the agreement was made,' " because of, e.g., forgery, and " 'some evidence should ... [be] produced to substantiate the denial.' " *T & R Enters.,* 613 F.2d at 1278 (quoting *Almacenes*

*Fernandez S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945)). Plaintiff's sworn affidavit, in combination with the two arguably distinct signature types seen by the Court, is sufficient to carry Plaintiff's burden and create an issue for factual determination under 9 U.S.C. § 4.[2]

## III. CONCLUSION

In order for the Court to dismiss or stay an action and allow the matter to proceed to arbitration, there must first be a valid agreement to arbitrate. The parties here dispute the validity of the asserted Arbitration Agreement, with their disagreement turning upon the authenticity of Plaintiff's purported signature. A careful perusal of the signatures before the Court indicates a legitimate possibility that the signature is not Plaintiff's, and thus a fact issue exists regarding the validity of the signature that the Court cannot ignore. In resolving this issue, the Court reminds the parties of its right to retain its own handwriting expert under Federal Rule of Evidence 706. Therefore, for the reasons discussed above, Defendant's Motion to Dismiss is **DENIED.**

The Court also, without impugning anyone's character or honesty, provides a word of caution to the parties. Perjury carries a severe penalty. *See* 18 U.S.C. §§ 1621–1623 (providing for a fine and/or imprisonment of not more than five years as punishment). Moreover, the parties and their counsel could be subject to civil sanctions by this Court. Thus, the Court observes that if additional investigation should reveal that Plaintiff did or did not sign the Arbitration Agreement, Plaintiff or Defendant respectively may wish to timely invoke the safe-harbor provision of Federal Rule of Civil Procedure 11 and concede the truth of the other's position, if

**2.** The Court recognizes that in its *T & R Enterprises* decision, the Fifth Circuit explicitly distinguished case law in which a party had not signed the arbitration agreement. *See T & R Enters.,* 613 F.2d at 1278. Thus, one could argue that this burden is not applicable in a forgery case. However, the Eleventh

Circuit's subsequent application of the *T & R Enterprises* standard in a forgery case persuades the Court of its vitality in the present scenario. *See Chastain v. Robinson–Humphrey Co., Inc.,* 957 F.2d 851, 854–55 (11th Cir.1992).

appropriate. Barring this, however, Plaintiff is entitled to his day in court on the issue of signature authenticity.

This matter is presently set for a Rule 16 Scheduling Conference on January 19, 2001 at 11:00 A.M. The Court expects that Plaintiff and Defendant will be prepared to set deadlines for a concise discovery period limited solely to the signature issue, in anticipation of an expeditious trial solely on the merits of this forgery claim.

**IT IS SO ORDERED.**